In re The MARRIAGE OF Lawrence
Howard BALLAY and Helen
June Ballay.

Lawrence Howard BALLAY,
Petitioner–Respondent,

v.

Helen June BALLAY, Respondent–
Appellant.

No. 20481.

Missouri Court of Appeals,
Southern District,
Division One.

June 12, 1996.

John A. Woodard, P.C., Monett, for respondent-appellant.

James J. Randall & Associates, P.C., Monett, for petitioner-respondent.

PER CURIAM.

In this dissolution of marriage case, Appellant (Wife) contends that the trial court erred in classifying certain items of property as Respondent's (Husband's) separate property, in awarding a disproportionate percentage of the marital property to Husband, and in denying her a maintenance award.

The parties were married for 24 years when Husband filed the instant petition for dissolution in July, 1991. Prior to the marriage, Husband owned an undivided one-third interest (with his brother and sister) in a 117–acre farm (the 117 acres). He and his brother (George) had been given a dairy herd and machinery by their parents, and have jointly conducted a dairy operation referred to in the record as "Ballay Brothers" on the 117 acres. The cattle remaining in the herd were descendants of the original herd with the exception of 20 head which were purchased from George's son. Some of the machinery had been replaced through purchases made by George for use in the

partnership, and other machinery purchases were made with contributions from Husband and George.

The income from milk production was divided equally by the purchaser of the milk and paid individually to George and Husband. While there were suggestions that "Ballay Brothers" might be a partnership, there was no evidence of a partnership agreement. In fact, the evidence indicated that no partnership income tax returns were filed, but rather Husband reported his share of the income and expenses in connection with the dairy operation on his personal returns without indicating that they resulted from a partnership operation.

▪ Our review of a judgment entered in a dissolution case is governed by the principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Hogan v. Hogan*, 796 S.W.2d 400, 403 (Mo.App.E.D.1990). We must affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence. *Id.* It is the duty of the trial court to decide the weight and value to be given the testimony of any witness. *Id.* Accordingly, we defer to the trial court even if the evidence could support a different conclusion. *Id.*

### POINT ONE

In her first point, Wife contends that the trial court erred in determining that Husband's interest in "cattle, accounts, equipment and improvements to the real property used in the Ballay Brothers dairy farming partnership" was his separate property. Instead, she argues that those items should have been classified as marital property.

The trial court concluded, in its findings, that the cattle being milked were descendants of cattle acquired prior to the marriage; and the 117–acre tract, the cattle, and the machinery purchased all constituted "capital equipment of the family dairy operation" and, as such, were not marital property.

1. All references to statutes are to RSMo 1994.

In its decree, the trial court held that Husband's separate property included not only his interest in the 117 acres, but also "[a]ll interest in cattle, accounts and equipment, being also described as Husband's interest in the Ballay Brothers partnership assets."

▪ In reviewing the propriety of a classification of property as marital or nonmarital (separate) in a dissolution case, we look to § 452.330.3 [1] which provides:

> 3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

Section 452.330.2 provides that property acquired subsequent to the marriage does not constitute marital property if it was acquired in any of the following methods:

> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of legal separation;
>
> (4) Property excluded by valid written agreement of the parties; and
>
> (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

To overcome the statutory presumption that property acquired during the marriage is marital, a party claiming that it is nonmarital must prove it to be so with clear and convincing evidence. *Sprock v. Sprock*, 882 S.W.2d 183, 185 (Mo.App.W.D.1994).

We will separately address each type of asset which Wife contends should have been declared marital property.

### CATTLE

In September, 1994, when the final evidence was taken in the case, an exhibit indicated that the dairy herd in which Husband and George had an interest consisted of 80 head (34 cows, 28 yearlings, and 18 calves), including 20 head which had been purchased from one of George's sons. There was a conflict in the evidence concerning whether Husband provided any of the consideration for that purchase and therefore had any ownership interest in them. With the exception of the 20 head, all of the remaining herd were descendants of the cattle given to Husband and George by their parents. Husband's evidence was that he had a 25% interest in the 80 head, valued at $10,257.

Wife does not argue that the marital property included any interest in the 20 head which had been purchased or their offspring. Instead, she argues that the remaining descendants of the original herd were marital property because they were born during the marriage. She relies on *Williams v. Williams*, 716 S.W.2d 13, 15–16 (Mo.App. W.D.1986), in which the court held that calves born during the marriage were marital property even though they were born to cows which were nonmarital property. In doing so, the court likened them to dividends from premarital stock. *Id.* See also *Elder v. Elder*, 824 S.W.2d 520, 521 (Mo.App.S.D. 1992), and *In re Marriage of Williams*, 639 S.W.2d 236, 237 (Mo.App.S.D.1982).

Husband relies, however, on *Milde v. Milde*, 723 S.W.2d 471 (Mo.App.E.D.1986). In *Milde*, the court distinguished the *Williams* cases by saying:

> Those cases [*In re Marriage of Williams*, 639 S.W.2d 236, and *Williams v. Williams*, 716 S.W.2d 13] involved beef cattle where the end product of the farming operation is the new livestock produced. In that sense such livestock is analogous to a dividend on separately owned stock. In a dairy operation new cattle are replacement for the milk-producing component of the operation. The milk they produce is the end product of the business. The newly born cattle are more nearly analogous to replacement of capital equipment than to a dividend.

*Id.* at 473. This is the approach apparently taken by the trial court in the instant case concerning cattle in the existing dairy herd which descended from the original herd.

The issue in *Milde*, however, was whether the cattle in question belonged to a corporation, the stock in which was Husband's separate property, or whether the dairy cattle were owned by the parties. *See Elder v. Elder*, 824 S.W.2d at 521 n. 2. Even if the quoted language from *Milde* was not dictum, we disagree with the premise for the distinction between dairy and beef cattle referred to in that opinion. First, it does not distinguish between bull and heifer calves, or heifer calves sold rather than retained for replacement stock. Rather, it assumes that all calves will become part of the milk producing component of the herd. Secondly, while it is true that heifer calves born to cows in a dairy herd may be retained for future milk production, and thereby perhaps constitute the equivalent of the replacement of capital equipment, the same can be said of beef cattle. A goal of a beef producer is to sell offspring. It may also be a goal, however, to increase the number of cows in the herd in order to produce more calves, a result which can be accomplished by retaining heifer calves. Likewise, heifer calves may be retained merely as replacement stock for cows which are culled because of old age or other conditions. In these respects, we fail to see a distinction between calves born to dairy, as opposed to beef, cattle as it relates to their classification as marital property in a dissolution case.

With the exception of the 20 head purchased from George's son (and any of their offspring which remain in the herd), about which Wife makes no argument, Husband's interest in the remainder of the 80 head of cattle is presumed to be marital property because they were born during the marriage. A party claiming that property, which is presumed to be marital, is in fact separate or nonmarital has the burden of

rebutting the presumption. *In re Marriage of Patroske,* 888 S.W.2d 374, 379–80 (Mo. App.S.D.1994); *Jensen v. Jensen,* 877 S.W.2d 131, 136 (Mo.App.E.D.1994). We are directed to no evidence in this case upon which the trial court could have based its finding that Husband's one-half interest in the descendants of the herd which originated with his parents was his separate property. Likewise, our own review of the record has revealed none. It was error for the trial court to classify Husband's interest in them as his separate property.

### ACCOUNTS

■ Wife argues that "the accounts . . . of the business, which were derived from Mr. Ballay's work during the marriage, were the same as any other property acquired during the marriage, i.e., presumptively marital property." She is apparently referring to the accounts about which there was evidence, i.e., a "farm account" and a "personal account," both of which were joint accounts between Husband and Wife.[2]

The evidence was that the sole income from "Ballay Brothers" was from the sale of milk, calves, and cows when they went "bad." Husband and George each received a substantially equal check from the entity buying the milk. Husband reported, as personal income on his tax returns, his portion of the sales of milk and cattle. That income was deposited in the "farm account." Husband's income as a carpenter was deposited in the "personal account."

■ Income earned during the marriage constitutes marital property, even if it is earned from separate property. *See In re Marriage of Gardner,* 890 S.W.2d 303, 305 (Mo.App.S.D.1994); *In re Marriage of Rickard,* 818 S.W.2d 711, 721 (Mo.App.S.D.1991). This applies to income from a farm business. *Sprock v. Sprock,* 882 S.W.2d at 187. In fact, the trial court found that Husband's income from the dairy operation was marital property. All of Husband's income went into joint bank accounts, which itself creates a pre-

sumption that it is marital property. *See In re Marriage of Patroske,* 888 S.W.2d at 379; *Butler v. Butler,* 870 S.W.2d 953, 957 (Mo. App.E.D.1994); *Doll v. Doll,* 819 S.W.2d 739, 740–41 (Mo.App.E.D.1991).

In the instant case, the evidence indicated that the two accounts totalled over $1800 at the conclusion of the trial. The trial court, however, apparently classified both accounts as the separate property of Husband. It was error to do so.

### EQUIPMENT

■ Wife also claims that the trial court erred in determining that all of Husband's interest in the farming equipment constituted his separate property. She claims that equipment purchased during the marriage with Husband's earnings from the dairy operation should be part of the marital property.

The income from the dairy operation was deposited into the "farm account" and was used to pay for Husband's portion of the farm expenses, including equipment purchases in which he participated. As indicated earlier, the income that went into those accounts constituted marital property. Likewise, property purchased during the marriage with that income constitutes marital property. *In re Marriage of Gardner,* 890 S.W.2d at 305–306.

In the instant case, the testimony indicated that a baler had been purchased by trading in one owned by George, with George and Husband each paying one-half of the remaining purchase price of $6000. Husband testified that he considered that he had one-fourth of the money in that baler. In addition, the joint income tax returns indicate that some equipment was purchased during the marriage and was being depreciated by Husband and Wife. Husband also offered evidence in the form of an appraisal of the farm equipment and testified that, of the total of $40,135, his ownership interest amounted to $15,755. According to the testi-

---

**2.** The decree awarded Husband "[a]ll interest in . . . accounts . . . being also described as Husband's interest in the Ballay Brothers partnership assets." There was no evidence of an exist-

ing "Ballay Brothers" account other than the "farm account," jointly held with Wife, which Husband sometimes referred to as "Ballay Brothers."

mony of George Ballay, Husband contributed to the purchase of equipment contained on that list which had a total value of $22,060. Obviously, Husband's interest in some of the equipment constituted marital property. It was error to classify it as Husband's separate property.

### IMPROVEMENTS TO REAL ESTATE

█ Wife's point relied on also refers to "improvements to the real property" as being included in the property which she claims should have been classified as marital. She argues in her brief that earnings from the dairy operation were used to make improvements in the form of new buildings on the 117–acre tract, and refers to testimony by Husband that "we put up a big hay barn" and "we put a new loafing shed up."[3] The only reference to how those improvements were paid for was his testimony that "[w]e just built it out of the Ballay Brothers."

█ Pursuant to § 452.330.2(5), an increase in the value of property acquired before the marriage remains nonmarital "unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions." There must be a direct correlation between the marital assets expended and the increase in value. *Deffenbaugh v. Deffenbaugh*, 877 S.W.2d 186, 188 (Mo.App.E.D.1994); *Meservey v. Meservey*, 841 S.W.2d 240, 245–46 (Mo.App.W.D.1992). *See also In re Marriage of Patroske*, 888 S.W.2d at 379. In the instant case, there was no evidence indicating the source of the funds used to pay for the improvements other than that they were from "Ballay Brothers." There was no evidence that they were actually marital funds, or if so, the amount expended. Likewise, there was no evidence concerning the extent to which the improvements increased the value of Husband's interest in the nonmarital 117–acre tract. Under these circumstances, the trial court did not err in failing to declare any portion of Husband's

interest in that real estate as marital property.

█ The question remains whether the failure to classify Husband's interest in the cattle, accounts and equipment as marital property requires a reversal. Not all erroneous designations of property in a dissolution case are necessarily prejudicial, requiring a reversal. *In re Marriage of Gardner*, 890 S.W.2d at 306. The primary concern of this court is the correctness of the result and not the route which was taken to arrive there. *In re Marriage of Rickard*, 818 S.W.2d at 719.

In the instant case, there were items of property apparently valued at over $25,000 which were incorrectly classified as Husband's separate property. The amount of this property is significant considering the fact that the other property which the trial court classified as marital and divided between the parties was valued at $97,865. Under these circumstances, we are unable to conclude that the designation of these items of property as nonmarital did not materially affect the merits of the property division. Accordingly, we must reverse the judgment as it relates to the classification of the cattle, accounts and equipment as marital property.

### POINT TWO

█ In her second point, Wife alleges trial court error in awarding Husband a disproportionate share of the marital property because of her "alleged marital misconduct."[4] She contends that there was insufficient evidence that she engaged in an extramarital affair prior to the breakdown of the marriage, and that Husband failed to demonstrate how the alleged misconduct placed an additional burden on him.

The fact that the judgment must be reversed and remanded because of the incorrect classification of property as nonmarital will affect the division of marital property.

---

**3.** Wife refers us to her testimony about new barns costing $10,000. She was obviously referring to improvements to an 80–acre tract which was jointly owned by Husband and Wife and which the trial court determined was marital property.

**4.** Based upon the values assigned by the trial court, Husband was awarded 67% of what it classified as marital property and Wife was awarded 33%.

Therefore, we must also reverse the judgment as it relates to that issue and remand for further proceedings. The amount of marital property awarded to Wife may ultimately be different. We need not, therefore, determine whether the percentages of the initial distribution of that property were appropriate.

Nevertheless, the matter of marital misconduct will undoubtedly arise in connection with the trial court's consideration of the division of property upon remand. Accordingly, for the purposes of judicial economy, we will consider the contention of Wife that the evidence of such misconduct was insufficient and should not be a factor in the division of property.

In dividing what it found to be marital property, the court stated that it had considered the factors contained in § 452.330, including the conduct of the parties during the marriage. It found that Wife engaged in an affair prior to the parties' separation which she flaunted before the community and her family. There was evidence that she would often be absent from the family home on weekends, leaving Husband to care for the unemancipated child, as well as taking care of his duties in connection with the dairy farm. In addition, there was evidence that Wife spent marital funds on gifts for the person she was seeing. Upon our review of the record, we have concluded that there was sufficient evidence from which the court could have concluded that Wife did engage in such conduct.

■ It is true, as argued by Wife, that for misconduct to be a factor in the division of property, it must place an extra burden on the other spouse. *See Rich v. Rich,* 871 S.W.2d 618, 626 (Mo.App.E.D.1994); *Divine v. Divine,* 752 S.W.2d 76, 78 (Mo.App.S.D. 1988). In *Fields v. Fields,* 643 S.W.2d 611, 616 (Mo.App.W.D.1982), the court held that marital misconduct becomes a viable factor where it places extra burdens on the nonerrant spouse "in the partnership endeavor. The rationale being if one spouse is compelled to contribute more to the partnership endeavor due to the other's misconduct, he or she is entitled to have the errant spouse's misconduct taken into consideration ..." in

dividing marital property. *Id.* The evidence in this case justified the trial court's consideration of Wife's conduct in dividing the marital property. The same would be true on remand.

### POINT THREE

Wife also alleges that the trial court's failure to award her maintenance was error. She argues that Husband had the ability to provide maintenance while meeting his own needs, and that her ability to work was limited by her work experience and medical conditions.

■ Section 452.335.1 provides that the court may award maintenance if it finds that the spouse seeking it (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. In reviewing a dissolution decree, we are mindful that the trial court has wide discretion regarding the award of maintenance. *Whitworth v. Whitworth,* 878 S.W.2d 479, 483 (Mo.App.W.D.1994). Maintenance is awarded only to meet demonstrated needs. *Bybee v. Bybee,* 879 S.W.2d 793, 795 (Mo.App.S.D. 1994).

In the instant case, the testimony indicated that Wife was 48 years old with a high school education. She had worked at a local Dairy Queen or as a waitress for a number of years until she was hospitalized with a nervous condition in September, 1992. She resumed working as a waitress at an unspecified time, and continued until April, 1993 when she quit, saying she wanted to move and had unspecified problems with her leg. Thereafter, she returned to work as a waitress, earning $8227 in 1993, and was still working when the trial concluded in September, 1994. Although Wife claimed to suffer from various medical problems, she did not present any evidence that they prevented her from being employed. *See Carter v. Carter,* 869 S.W.2d 822, 833 (Mo.App.W.D.1994).

The trial court, in May, 1993, awarded Wife $250 per month as temporary maintenance. At trial, she requested that the court award her monthly maintenance of $400. Her only evidence about monthly living expenses disclosed a total of $650–$670, plus an

anticipated health insurance cost of $248 per month. She also testified that she had borrowed $1000 to live on.

 In considering the needs of a spouse, the court is to consider the marital property awarded. *Carter v. Carter,* 869 S.W.2d at 830–31. *See also Drikow v. Drikow,* 803 S.W.2d 122, 128 (Mo.App.E.D.1990). In the instant case, the trial court, in awarding no maintenance to Wife, evidently considered the fact that it awarded her a money judgment of $17,394 to equalize the division of marital property, and ordered Husband to pay various debts, including some incurred by Wife. This portion of the award may or may not change upon remand when the trial court reconsiders that issue. We must, therefore, reverse that portion of the judgment in which no maintenance was awarded to Wife so that on remand the trial court can reconsider the issue in light of the division of marital property ultimately ordered.

We reverse the judgment to the extent that it classified all of the parties' interests in cattle, accounts and equipment as Husband's separate property; divided the marital property; and awarded no maintenance to Wife. We remand the case to the trial court for additional proceedings consistent with this opinion.