In re the Marriage of McKEE: Fred
Michael McKee, Petitioner–
Appellant,

v.

Levina Lynn McKEE, Respondent–
Respondent.

No. 20839.

Missouri Court of Appeals,
Southern District,
Division Two.

March 26, 1997.

Robert M. Sweere, Springfield, for petitioner-appellant.

Gary W. Lynch, Douglas, Lynch, Haun & Kirksey, Bolivar, for respondent-respondent.

SHRUM, Judge.

In this domestic relations case Fred Michael McKee (Husband) appeals from a judgment dissolving his marriage to Levina Lynn McKee (Wife). He challenges the portions of the judgment ordering him to pay maintenance, dividing marital property, and assessing as costs the fees of an expert witness.

Wife moved for dismissal of Husband's appeal on the theory that Husband accepted the benefits of the judgment. We deny her motion.

We reverse that portion of the judgment ordering Husband to pay retroactive maintenance and assessing Husband to pay Wife's expert witness expenses as a cost. In all other respects, we affirm the judgment.

## MOTION TO DISMISS APPEAL

Wife asks this court to dismiss Husband's appeal. Her request for dismissal relies on the general rule that a party "who has voluntarily and with knowledge of all the material facts accepted the benefits of a decree or judgment of a court cannot afterwards take or prosecute an appeal to reverse it." *In re Marriage of Tennant*, 769 S.W.2d 454, 455[1]

(Mo.App.1989). Wife asserts that the general rule stated in *Tennant* applies here because Husband benefited when he sold the marital residence that was awarded to him in the dissolution decree for substantially more than the value placed on it by the court; hence, we should dismiss Husband's appeal. We disagree.

■ The rule regarding voluntary acceptance of judgments "has its exceptions." *Knebel v. Knebel*, 189 S.W.2d 464, 466 (Mo. App.1945).

"Whether or not the acceptance of partial payment of a judgment constitutes an exception is to be decided on a case to case basis considering all relevant circumstances. Included in the factors which have been considered in finding such an acceptance to be an exception to the general rule are the following: ... the amount accepted has effectively been conceded to be due by a [wife] who did not appeal ...; the acceptance of benefits was due to financial distress ...; the absence of prejudice to the judgment debtor [wife] ...; and where the only issue on appeal is whether an award will be increased.... It has been observed 'the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved.'"

*Smith v. Smith*, 702 S.W.2d 505, 506–07 (Mo. App.1985) (citations omitted). *See Reynolds v. Reynolds*, 861 S.W.2d 825, 829 (Mo.App. 1993).

■ In this case, the January 1996 dissolution judgment awarded the marital residence at 4130 N. Haven, Springfield, Missouri, (Haven property) to Husband. It was valued at $73,000. The property was subject to a deed of trust lien of $41,174.49. Husband was ordered to pay that lien which called for monthly payments of $695.89. He was also ordered to pay Wife $22,118.79 to equalize the division of marital property. Maintenance of $900 per month retroactive to August 1, 1994, was awarded to Wife. Additionally, Husband was ordered to pay the court costs. The fee of an expert wit-

ness, Dr. Hills, was taxed as part of the costs.

As the parties' dissolution case developed, Husband was fired from his job, either collusively or in actuality.[1] Consequently, in the period from January through April 1996, his income was not sufficient to pay his monthly real estate loan installments, his maintenance obligation, or make payments on his other judgment debts. In March 1996, Husband borrowed $3,000 to cure some delinquencies in his house payments, but realized that he was facing foreclosure of the real estate loan. Consequently, on April 9, 1996, he listed the property for sale.

Earlier, on April 2, 1996, Wife commenced her efforts to collect the sums owed her under the decree. On that date, Wife's counsel sent a letter to the Greene County Sheriff with instructions and forms for Notice of Levy and Notice of Sheriff's Sale of Real Estate Under Execution. On April 15, 1996, the Greene County circuit clerk issued an order of execution at Wife's request. The order directed the sheriff to sell the marital property in an effort to collect Wife's $22,118.79 equalization payment, $19,710.02 in delinquent maintenance, and accrued interest. The total amount claimed was $42,273.74. The execution was served on Husband on April 18, 1996. The sheriff completed the Notice of Levy form and filed it with the recorder's office on April 18, 1996. He scheduled the execution sale for July 5, 1996. In an additional collection effort by Wife, she caused a garnishment to be served on Husband's account at Birch Tree Financial Services on April 29, 1996.

In an affidavit by realtor Williams filed with this court, he says that he showed the marital property to prospective purchasers (Olsens) on April 13 or 14, 1996. Olsens made an offer of $98,000 for the property on April 14, 1996. Husband accepted the offer the next day, April 15, 1996. The sale to Olsens was closed June 3, 1996. At closing Wife delivered a quit-claim deed and received $45,060.99 in satisfaction of sums owed her under the dissolution decree.

Applying the factors listed in *Smith*, 702 S.W.2d at 506–07, to this case, we find that Husband's sale of the marital house was not a voluntary acceptance of the benefits of the dissolution decree that mandates dismissal of his appeal. The marital real estate which he accepted had been effectively conceded by Wife to be Husband's property; she did not appeal. *See Smith*, 702 S.W.2d at 506. Moreover, Husband was in financial distress, perhaps in part of his own making, but also due to Wife's collection efforts via executions against the real estate. *Id.* at 506–07. However, we note that even if Husband's last full-income amount was imputed to him, he still would have been under significant financial distress, necessitating that he accept and sell the real estate. This we discern from the magnitude of his monthly obligations, i.e., $900 for maintenance, $695.89 house payment, utilities, insurance, living expenses, and the need to satisfy his judgment obligations. Missouri law indicates that payment of a judgment after execution or garnishment in aid of execution is considered involuntary. *Countryman v. Seymour R–II School Dist.*, 823 S.W.2d 515, 519 (Mo.App. 1992); *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo.banc 1983). We also note that Wife has not demonstrated any prejudice because Husband sold the real estate. *See Smith*, 702 S.W.2d at 507. To the contrary, she received all of her judgment amounts as a result of the sale, whereas if the real estate had been sold under distress, whether as a foreclosure or an execution sale, the sale may not have produced enough to pay all of her judgment liens. In making this observation, we deem it significant that by June 1996, the total real estate liens exceeded the $73,000 value that was assigned to the property by the trial judge.

Upon our review of the peculiar situations of the parties in this case and given the equitable considerations involved, we are not persuaded that Husband's appeal should be dismissed. Accordingly, we deny Wife's motion to dismiss Husband's appeal.

---

1. From the size of the maintenance award, it clearly appears that the trial court believed Husband's "firing" was pretextual.

## FACTS

The parties were married February 14, 1988, and ceased living together in July 1994. There were no children born of the marriage. At the time of trial, Husband was 59 and Wife was 50.

During the marriage, Wife changed jobs and quit her last job with Med–Pay Inc., in May 1994. Wife suffered from rheumatic fever as a child and, as a result, had metal valves placed in her heart. During the marriage, Wife began experiencing episodes of atrial fibrillation. Wife testified that she resigned from her position at Med–Pay due to her heart condition. She did not seek other employment on the advice of her doctor.

Husband was employed throughout the marriage by Tri–Lakes Express, a trucking firm owned by Bob White (White). However, he quit that employment in August 1994. Husband testified he was given an ultimatum by White forcing him to resign or be fired. Husband set up a computer programming business on his own. He also applied for jobs from various employers in the trucking industry. Yet, at the time of trial he was working only through his programming business.

For the first years of the marriage, Husband and Wife lived at his home on 1046 W. State, Springfield (State property). In 1991, they moved to the Haven property. Husband continued to own the State property until the summer of 1993. The trial court divided the marital property, awarding Husband the Haven property, the 1988 Ford pickup truck, two accounts with Birchtree Financial Services, and other personal property. Wife was awarded an equalization payment of $22,118.79 and other personal property. Wife was also awarded maintenance. This appeal followed.

Additional facts will be set out as needed throughout the course of this opinion.

## SCOPE OF REVIEW

Our review is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). *Mistler v. Mistler*, 816 S.W.2d 241, 245[1]

(Mo.App.1991). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32[1]. Within the confines of the law and the evidence, the trial court has discretion in awarding maintenance, *Franke v. Franke*, 747 S.W.2d 202, 203 (Mo.App.1988) and dividing marital property, *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990).

## DISCUSSION AND DECISION

*Point I: Retroactive Maintenance*

The trial court's Judgment and Decree of Dissolution, dated January 23, 1996, orders Husband to pay Wife maintenance beginning August 1, 1994. Husband contends that this order of retroactive maintenance misapplies the law and, therefore, should be reversed. *Murphy v. Carron*, 536 S.W.2d at 32[1]. We agree.

■ Missouri courts have consistently interpreted maintenance authorized by § 452.335 [2] as a prospective, not a retrospective, award. *C.M.D. v. J.R.D.*, 710 S.W.2d 474, 479 (Mo.App.1986); *Ritter v. Ritter*, 920 S.W.2d 151, 154–155[2] (Mo.App.1996). This court has specifically ruled that a trial court does not have the authority to award retrospective maintenance. *In re Marriage of Tappan*, 856 S.W.2d 362, 370[8] (Mo.App. 1993); *In re Marriage of Hunt*, 933 S.W.2d 437, 447[19] (Mo.App.1996).

Wife argues that this rule of law should be re-examined due to a lack of "legal analysis" in the seminal case of *C.M.D.* and the following line of cases. Wife contends that the language authorizing the court to award maintenance for "such periods of time as the court deems just," authorizes a retrospective award of maintenance. While we acknowledge Wife's desire for what she deems appropriate legal analysis, this court finds no reason to rule contrary to established precedent. The language "such periods of time as the court deems just" does not indicate a desire

---

2. References to statutes are to RSMo.1994 unless otherwise indicated.

on the part of the legislature to make maintenance retrospective.

In *Tappan*, this court noted that retroactivity was not added to the maintenance statute, § 452.335, when it was modified in 1988. 856 S.W.2d at 370, n. 8. However, the same enactment brought retroactivity to the child support statute, § 452.340. 1988 Mo.Laws, H.B. Nos. 1272, 1273, and 1274, pp. 951–67. *C.M.D.* was decided in 1986, as was *Kessler v. Kessler*, 719 S.W.2d 138 (Mo.App.1986). Yet, the legislature took no action while amending § 452.335 in 1988 to authorize awards of retrospective maintenance.

In construing statutes to ascertain legislative intent, the legislature is presumed to be aware of interpretation of existing statutes by appellate courts. *Carter v. Pottenger*, 888 S.W.2d 710, 714[7] (Mo.App.1994). Further, in amending a statute or enacting new statutes on the same subject, it is ordinarily the intent of the legislature to effect change in the existing law. *Id.* Since the legislature chose not to act in the wake of appellate decisions which struck down retrospective maintenance, we continue in the view that the legislature never intended maintenance to be retrospective. Accordingly, we reverse the trial court's award of maintenance retroactive to August 1, 1994, and remand for a ruling consistent with this opinion.

*Point II: Award of Maintenance*

Husband's second point contends that the trial court erred in awarding Wife maintenance because he is unable to pay such an award, and a conclusion to the contrary is speculative. The trial court ordered Husband to pay $900 per month to Wife in maintenance. The trial court specifically found that Husband was capable of paying that amount per month in maintenance.

Husband argues that he is not capable of paying the ordered amount of maintenance. He draws attention to his age, repeated efforts to find work, and his income and expenses per month. Husband asserts his unemployment is involuntary, the result of a "quit or be fired ultimatum" from his former employer.

Wife challenges the voluntary nature of his unemployment. Specifically, she notes the closeness in time between Husband's filing of a dissolution, Wife's serving Husband with a cross-petition for dissolution, and Husband receiving the "quit or be fired" ultimatum. She also draws attention to the fact that Husband and his former employer, White, often argued and disagreed before the ultimatum was given. Wife also points to the friendship between Husband and White, noting loans from White to Husband and social interaction between Husband and White after Husband's resignation from his job.

Husband cites to several cases in which a reviewing court has found that an award of maintenance was excessive and beyond the ability of a former spouse to pay. *Zlatic v. Zlatic*, 910 S.W.2d 818 (Mo.App.1995); *Kinder v. Kinder*, 777 S.W.2d 339 (Mo.App.1989); *Arnold v. Arnold*, 771 S.W.2d 914 (Mo.App. 1989); *Parker v. Parker*, 744 S.W.2d 469, 472 (Mo.App.1987).

In this case, the trial court imputed income to the husband, finding that he could earn enough to pay maintenance in the amount of $900 per month. It was not an abuse of discretion to impute income to Husband if the court believed his reduction in income was voluntary. *Cooper v. Cooper*, 778 S.W.2d 694, 698 (Mo.App.1989); *In re Marriage of Faulkner*, 582 S.W.2d 292, 294[2] (Mo.App.1979).

In an action for dissolution, it is the duty of the trial court to decide the weight and value to be given the testimony of witnesses. *In re Marriage of Ballay*, 924 S.W.2d 572, 574[2] (Mo.App.1996). On appeal, evidence is viewed in a manner most favorable to the decree, and contrary evidence is disregarded. *Id.* at 574[2]. Deference is given to the trial court even if a different conclusion could be supported by the evidence. *Id.* at 574[4]. Here, the trial court weighed the testimony of Husband and White regarding Husband's termination of employment. The record supports a conclusion that Husband's unemployment was voluntary. The trial court was presented evidence that Husband and White had frequently argued throughout Husband's employment at Tri–Lakes without apparent jeopardy to Husband's employment. In ad-

dition, the trial court had evidence that Husband and White were friends. We note in particular the fact that Husband, a former employee seeking employment from competitors, was given continued access to White's computer system. We find that the trial court did not err in imputing income to Husband.

▪ Husband argues $900 per month, even with an imputed income of $36,000.00, is excessive and beyond his ability to pay. His argument rests on calculations derived from state and federal income tax publications. Under his calculations, Husband has only $692.99 per month left to pay maintenance after expenses. Wife counters with calculations of her own, derived from the same state and federal sources. Wife, however, points out that Husband did not reflect a deduction for the amount of maintenance from his taxable income. Wife's calculations leave Husband with $1,569.34 to pay maintenance. We find that, with a deduction for maintenance from taxable income, Husband is able to pay maintenance as set by the trial court. The trial court did not abuse its discretion in awarding Wife maintenance. Point II is denied.

*Point III: Division of Marital Assets*

Husband's third point maintains that the marital property distribution, which he describes as "an unjust division," is erroneous because the trial court failed "to give sufficient weight to the contributions of [Husband] to the acquisition of the marital property."

▪ The Dissolution of Marriage Act consigns the division of marital property to the sound discretion of the trial court. *In re Marriage of Gourley*, 811 S.W.2d 13, 15 (Mo. App.1991) (citing *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo.banc 1983)). This court must defer to the trial court's marital property division unless the division is improper under the principles of *Murphy v. Carron*, 536 S.W.2d at 32[1], or an abuse of discretion is shown. *Gourley*, 811 S.W.2d at 15[1]. We presume the correctness of the division of marital property; on appeal, the

party challenging the division has the burden of overcoming the presumption. *Bixler v. Bixler*, 810 S.W.2d 95, 100[13] (Mo.App.1991).

▪ A trial court's division of marital property does not have to be equal; it must be fair and equitable and take into account the factors enumerated in § 452.330.1. *Mistler*, 816 S.W.2d at 252[8]. The § 452.330.1 factors do not constitute an exclusive list for the trial court's consideration. *Id.* at 252[9].

▪ Although Husband was awarded the marital home (Haven property), the 1988 Ford pickup truck, and the two accounts with Birchtree Financial Services, he challenges the trial court's order requiring him to pay Wife $22,118.79 in equalization of the division of marital property. Husband argues that any equity in the Haven's property and the Birchtree accounts were the result of his investment of nonmarital assets. He also notes the 1988 Ford pickup was purchased with nonmarital assets. Therefore, he maintains the trial court erred in awarding a payment in equalization of the division of property to Wife.

In addition to the contribution of each spouse to the acquisition of marital property (§ 452.330.1(2)), the court must consider three other factors: (1) the economic circumstances of each spouse at the time the division of property was to become effective, § 452.330.1(1); (2) the value of nonmarital property, § 452.330.1(3); and (3) the conduct of the parties during marriage, (§ 452.330.1(4)).[3] There is no formula respecting the weight a trial court should give the relevant statutory factors. *In re Marriage of Harrison*, 657 S.W.2d 366, 370[4] (Mo.App.1983).

The trial court had before it evidence of the parties' respective economic circumstances, including each party's capacity to work and earn. *Harrison*, 657 S.W.2d at 370. In addition, the trial court was provided with evidence of each party's nonmarital property. The court also heard testimony regarding parties' conduct during marriage. Finally, the trial court heard evidence on

**3.** The child custody factor, § 452.330.1(5), is irrelevant in this case.

each spouse's contribution to the acquisition of marital property.

As a reviewing court, we presume that the trial court considered all the evidence when it divided the marital property. *S.L.J. v. R.J.*, 778 S.W.2d 239, 244[9] (Mo.App.1989). The record supports the conclusion that the trial court did so. We find no abuse of discretion by the trial court in its division of the marital property, and deny Husband's third point.

*Point IV: Taxing of Expert Witness Costs*

██ Husband's final point alleges the trial court erred in taxing Wife's expert witness expenses as a court cost. The trial court assessed court costs against Husband, specifically ordering him to pay the charge of Wife's expert witness as a "cost of this case." We agree with Husband that this characterization and assessment of expert witness expenses as a court cost is erroneous.

██ An expense that is taxable as a cost must be specifically authorized by statute or by agreement of the parties. *Architectural Resources, Inc. v. Rakey*, 912 S.W.2d 676, 679[4] (Mo.App.1995) (citing *Groves v. State Farm Mutual Automobile Insurance Company*, 540 S.W.2d 39, 44[9] (Mo.banc.1976)). Missouri has no statute authorizing the taxing of expert witness fees as a cost. *Architectural Resources, Inc.*, 912 S.W.2d at 679 (citations omitted). The record indicates no agreement between Husband and Wife authorizing the taxing of this cost. Therefore, the trial court erred in assessing the expert witness fees as a cost.

Wife concedes the trial court erred. Nonetheless, she states that the trial court could properly assess expert witness fees under § 452.335(1). She asks this court to use its authority under Rule 84.14 to amend the trial court's order and assess the expert witness expenses to Husband under § 452.335(1).

██ A party bears a heavy burden to show why he or she must depart from the usual rule that a litigant must pay his or her own litigation expenses. *Id.* at 679[3] (citing *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 342[7] (Mo.App.1986)). The record on appeal does not contain the trial court's reasoning behind awarding expert witness expenses to Wife. We also note that the trial court did not award Wife attorney's fees. Wife does not argue in her brief or at oral argument why she should not have to pay her own expenses. Without guidance from the record or argument from Wife, we will not use our power under Rule 84.14 to assess Wife's expert witness costs to Husband. We reverse the trial court's taxing of expert witness expenses to Husband and remand for proceedings consistent with this opinion.

That part of the judgment awarding retroactive maintenance and taxing as costs the fees of the medical expert is reversed; the case is remanded for entry of a judgment consistent with this opinion; in all other respects, the judgment is affirmed.

MONTGOMERY, C.J., concurs.

CROW, Presiding Judge, concurring.

I concur.

I write separately for the sole purpose of commenting on the denial of Wife's motion to dismiss Husband's appeal.

In an earlier dissolution case, *In re Marriage of Vinson*, 839 S.W.2d 38 (Mo.App. S.D.1992), I authored an opinion holding that a party who acknowledged satisfaction *in full* of the portion of a decree awarding marital property was barred from claiming on appeal that such party should have been awarded a greater share of the marital property. *Id.* at 39–42. However, in *Vinson* (unlike the instant case), the appealing party was under no duress to accept the award. That factor distinguishes *Vinson* from the instant case, where Husband was compelled to sell the Haven property (one, but not all, of the items of marital property awarded him) or lose it at execution, or possibly foreclosure.

Furthermore, this court did not dismiss the appeal in *Vinson*. This court entertained the appealing party's complaints about the maintenance award and found two complaints valid. *Id.* at 42–44.

For the above reasons, nothing in the principal opinion in the instant case contradicts *Vinson*.