**Brenda Fay WENDEL, Petitioner–
Respondent,**

v.

**David Hubert WENDEL, Respondent–
Appellant.**

**No. 24230.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 2002.

---

1. All rule references are to Mo. R.Crim. P.2002, unless otherwise indicated.

Keith D. Sorrell, Spain, Merrell & Miller, L.L.P., Poplar Bluff, for Appellant.

Douglas R. Kennedy, Kennedy, Kennedy & Robbins, LC, Poplar Bluff, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

David Hubert Wendel ("Husband") appeals from a judgment entered in a dissolution of marriage case filed by Brenda Fay Wendel ("Wife"). He claims that the trial court erred by awarding Wife retroactive temporary maintenance, and including two sets of collectibles and a car in its distribution of marital property. He argues that the items of property were corporate assets not subject to distribution as marital property. We affirm the trial court's judgment on the first point, but reverse and remand on the two points relating to the designation of the collectibles and car as marital property, and instruct the court to reevaluate the distribution of property based on those items being classified as assets of Family Enterprises, Inc. (FEI), a corporation of which Husband is the sole shareholder.

Husband and Wife were married on May 22, 1993 in Poplar Bluff, Missouri. No children were born of the marriage. Wife filed a petition for dissolution of marriage on October 1, 1999. On the same day, she also filed a motion for temporary maintenance, attorneys' fees and costs pendente lite ("PDL motion").

On October 8, 1999, Husband and Wife filed a stipulation under which Husband agreed, during the pendency of the case, to pay Wife $1,000 per month as a partial property distribution, and to pay other enumerated monthly bills. The stipulation, which was signed and entered as an order by the trial court, also stated that "[t]he issue of maintenance shall remain pending and the parties agree that its application may be retroactive to the filing of the petition."

Following the trial, the final dissolution judgment was entered on March 29, 2001. In pertinent part, the judgment ordered Husband to pay Wife maintenance through March 31, 2002, including amounts dating back to October 1, 1999. In addition, as part of the property distribution, the trial court designated certain items as marital property, including a "Pillsbury Doughboy" collection, an "Elks" collection, and a 1998 Chrysler Sebring automobile. Wife was awarded the "Pillsbury Doughboy" collection and the car, while Husband was awarded the "Elks" collection. Lastly, the trial court stated that, in order "[t]o effectuate a just division, each party should receive the equivalent of one-half of the marital property; and [Wife] should have a money judgment against [Husband] in the amount of $169,022.00 ... to complete her share."

In his first point, Husband claims that the trial court erred in awarding Wife retroactive maintenance because it lacked jurisdiction under § 452.335[1] to render such an award. In a dissolution case, we affirm the decree "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law." *In re Fuldner,* 41 S.W.3d 581, 587 (Mo.App. S.D. 2001). It is for the trial court to determine credibility of witnesses and evidence, and we review "the evidence and permissible inferences therefrom in the light most favorable to the decree and [disregard] all contrary evidence and inferences." *Id.*

1. Unless noted otherwise, all statutory references are to RSMo (2000).

With regard to maintenance awards, "[w]ithin the confines of the law and evidence, the trial court has discretion in awarding maintenance." *McKee v. McKee,* 940 S.W.2d 946, 949 (Mo.App. S.D.1997).

Husband is correct that Missouri courts have consistently interpreted § 452.335 as only allowing prospective maintenance, not retrospective maintenance. *See Fuldner,* 41 S.W.3d at 587; *McKee,* 940 S.W.2d at 949–50; *Ritter v. Ritter,* 920 S.W.2d 151, 154–55 (Mo.App. W.D.1996); *C.M.D. v. J.R.D.,* 710 S.W.2d 474, 479 (Mo.App. E.D. 1986). However, a review of the pertinent cases will show that it is a mischaracterization of Missouri law to simply state that "a trial court does not have authority to award retroactive maintenance." *Fuldner,* 41 S.W.3d at 587. While § 452.335 does not allow such an award, there are circumstances, and statutory authority, under which a trial court may validly award retroactive maintenance. *See Browning v. Browning,* 947 S.W.2d 106, 111 (Mo.App. W.D.1997).

In *C.M.D.,* the husband appealed from a dissolution decree on the grounds that the trial court erred by awarding the wife retrospective maintenance. 710 S.W.2d at 478. Also, similar to the instant case, the wife in *C.M.D.* had filed a PDL motion, which included a request for temporary maintenance. *Id.* The husband provided some voluntary support during the pendency of the case. *Id.* at 479. The PDL motion, however, was never heard, and the appellate court reversed the retroactive maintenance award, stating that "if [the] wife was dissatisfied with this amount [the amount voluntarily provided by the husband], her remedy was to seek a ruling on her motion PDL .... [and her] failure to do so waived any claim she may have had for increased allowances during this period." *Id.* The appellate court reiterated that the trial court erred because

§ 452.335 spoke only prospectively. *Id.* In a case heard that same year, the appellate court reversed a retroactive maintenance award on the same basis. *See Kessler v. Kessler,* 719 S.W.2d 138, 140 (Mo.App. E.D.1986). However, the facts in *Kessler* do not show that a PDL motion for temporary maintenance was ever filed. *See id.* at 138–140.

A few years later, a husband appealed a PDL order, in which the wife's PDL motion for temporary maintenance had been granted. *See Roedel v. Roedel,* 788 S.W.2d 788, 789 (Mo.App. E.D.1990). The *Roedel* court made a distinction between § 452.335, which is directed toward maintenance orders made as part of a dissolution decree, and § 452.315, which speaks toward motions, including PDL motions for temporary maintenance, that are authorized during the pendency of a dissolution proceeding. *Id.* at 790–91; *see also* §§ 452.335.1 and 452.315.1. The statutory basis for the wife's PDL motion filed in *Roedel* was § 452.315, which the court determined was not bound by a prospective-only constraint, in that one purpose of making such support awards retroactive to the filing date of the PDL motion is to ensure that a spouse who needs temporary maintenance support during the pendency of a divorce proceeding is not "left utterly destitute" simply due to a delay in having the PDL motion heard. 788 S.W.2d at 791. The order for retroactive maintenance was affirmed, and the court held "that an award of temporary maintenance under § 452.315, unless waived, may be made retroactive to the date the motion seeking such an award was filed." *Id.*

The next case of interest was one in which the husband appealed from the provisions of a dissolution judgment where the wife had filed a PDL motion for temporary maintenance, which was never heard. *See In re Marriage of Davis,* 821 S.W.2d 123,

123–24 (Mo.App. W.D.1991). In a result that somewhat appeared to contradict *C.M.D.*, the *Davis* court found that the "wife should not be held to have forfeited or waived temporary maintenance because of her failure to demand and have an evidentiary hearing on the motion." 821 S.W.2d at 124. The court further stated that "[e]conomy is served by a single trial disposing of all issues, so a party should not be penalized for his or her election to forego an additional hearing on [PDL] motions. The denial of retroactive maintenance in the circumstances was an abuse of discretion." *Id.* The *Davis* result was reaffirmed in a case several years later in which a wife's PDL motion also was filed but never heard. *See Browning,* 947 S.W.2d at 107, 111. The *Browning* court determined that the retroactive maintenance award was allowed based on § 452.315, even though such an award would not be allowed under § 452.335. *Id.* at 111.

In three cases heard between *Davis* and *Browning,* the appeal was from the dissolution judgment, no PDL motion was filed for temporary maintenance and the appellate court reversed the retroactive maintenance award based on prior precedent under which such retroactive awards were not allowed under § 452.335. *See McKee,* 940 S.W.2d at 947–50; *Ritter,* 920 S.W.2d at 154–55; *In re Marriage of Tappan,* 856 S.W.2d 362, 363, 369–70 (Mo.App. S.D. 1993). Although in *Tappan* no PDL motion was filed, and in *C.M.D.* a PDL motion was filed but never heard, the *Tappan* court cites *C.M.D.* among its authority to reverse the retroactive award. *See Tappan,* 856 S.W.2d at 370; *see also C.M.D.,* 710 S.W.2d at 478.

In another case heard between *Davis* and *Browning,* the appellate court affirmed the trial court's retroactive maintenance award, which was made as part of the dissolution decree, because the husband had been ordered during pre-dissolution hearings to pay temporary maintenance. *See In re Marriage of Hunt,* 933 S.W.2d 437, 441, 446–47 (Mo.App. S.D. 1996). The *Hunt* court stated that although retroactive maintenance awards were not allowed under § 452.335, the award was appropriate in that case under § 452.315, because of the temporary maintenance order entered during the pre-dissolution hearings. *Id.* at 447.

One final case of note in our review is *Fuldner,* which involved an appeal from a dissolution judgment where no PDL motion was filed seeking temporary maintenance. 41 S.W.3d at 586, 598. The appellate court found that it was inappropriate for the trial court to have awarded maintenance that was not only prospective from the date of the decree, but also retrospective to the date on which the wife filed her petition for dissolution. *Id.* at 587. The *Fuldner* court specifically stated that "Missouri courts have consistently interpreted § 452.335 as authorizing prospective, as opposed to retrospective, maintenance." *Id.* "Consequently, a trial court does not have authority to award retroactive maintenance." *Id.* However, in a footnote, the *Fuldner* court draws the important distinction that, since the wife in the case "did not request temporary maintenance[,] .... cases which authorize retroactive temporary maintenance awards under § 452.315 ... are not controlling." *Id.*

In the case at bar, Wife's PDL motion included a request for temporary maintenance, but a hearing was never held on that motion. However, different from the cases reviewed above, the parties in the instant case filed a stipulation, which was entered as an order by the trial court, containing the statement that "[t]he issue of maintenance shall remain pending and

the parties agree that its application may be retroactive to the filing of the petition."

In all of the cases cited in which a retroactive maintenance award was allowed, a PDL motion for temporary maintenance had been filed, or at least the facts noted that an order to pay temporary maintenance had been made in pre-dissolution proceedings. *See Browning,* 947 S.W.2d at 111; *Hunt,* 933 S.W.2d at 447; *Davis,* 821 S.W.2d at 124; *Roedel,* 788 S.W.2d at 789, 791. On the other hand, in nearly all of the cases cited in which a retroactive maintenance award was reversed, a PDL motion for temporary maintenance award had not been filed. *See Fuldner,* 41 S.W.3d at 587, 598; *McKee,* 940 S.W.2d at 949–50; *Ritter,* 920 S.W.2d at 154–55; *Tappan,* 856 S.W.2d at 369–70; *Kessler,* 719 S.W.2d at 140. The only exception was *C.M.D.,* where the PDL motion had been filed but not ruled on, and the court determined that the lack of action constituted a waiver of the wife's claim to retroactive maintenance. 710 S.W.2d at 478–79.

Our affirmation of the trial court on this point lies in *Davis* and *Browning,* in which the appellate court stated that filing the PDL motion is more dispositive than whether a hearing was held on the motion. *See Browning,* 947 S.W.2d at 111; *Davis,* 821 S.W.2d at 124. It is important to note that affirming the trial court's decision in the instant case does not contradict *C.M.D.,* since the highlighted statement in Husband and Wife's stipulation shows that the parties specifically did not intend to waive any right to have maintenance applied retroactively to the date of the filing of the PDL motion. *See C.M.D.,* 710 S.W.2d at 479. Neither is our result inapposite to the *Tappan* case, in which no PDL motion was filed, yet the appellate court cited *C.M.D.* among the bases for which it determined that the trial court

lacked authority to award retroactive maintenance. *See Tappan,* 856 S.W.2d at 370. The distinction between when retroactive maintenance awards are allowed under § 452.315 versus § 452.335 is the primary basis for the holding in *Tappan* and others, and it is on that basis that we affirm the trial court's judgment on this point. *See id.* at 369–70. Husband's first point is denied.

Because Husband's second and third points essentially present the same argument, are reviewed in the same manner, and lead to the same outcome for both, we will address them together. In his second point, Husband claims that the trial court erred in its finding that two sets of collectibles, the "Pillsbury Doughboy" collection and the "Elks" collection, were marital property. In his third point, he claims that the trial court erred in its finding that a particular vehicle, a 1998 Chrysler Sebring, was marital property. He maintains that all of the items were purchased by FEI, were corporate assets and, therefore, not subject to division as marital assets. Within the property distribution, Wife was awarded the "Pillsbury Doughboy" collection and the car, while Husband was awarded the "Elks" collection. The trial court valued the "Pillsbury Doughboy" collection at $46,000, the car at $20,000, and the "Elks" collection at $150,000.

Our standard of review is the same as it was on the first point, in that we will set aside the divorce decree in total or in part "only if there is no substantial evidence to support the judgment or the [trial] court erroneously declared or applied the law." *Miller v. Miller,* 635 S.W.2d 350, 352 (Mo.App. W.D.1982). "In addition, the lower court is vested with considerable discretion in dividing marital property." *Id.*

As background, we note that Husband is the sole shareholder in FEI, a Missouri

corporation that he purchased in 1986, prior to the marriage. Within the dissolution judgment, the trial court found that the shares of FEI were non-marital property to be set apart to Husband and that, since Wife had not made a substantial contribution to the corporation, had been adequately compensated for any services she provided to the corporation and had not directly contributed to the increase in value of the corporation, she was not entitled to share in either FEI or its increase in value. This finding is not at issue in this appeal.

■ While there is conflicting testimony regarding the purposes for which the car and collectibles were purchased, as well as their use, Husband and Wife agree that each of the three disputed items were purchased by the corporation with its funds. As for the collectibles, Wife testified that both sets were displayed in their home and used for both her and Husband's enjoyment. Husband testified that both sets of collectibles are listed on the corporation's books and were stored and displayed at their home simply because there was no room to do so at the corporation's place of business.

With respect to the car, Wife testified that the car was a birthday gift to her. Both Husband and Wife testified that it was titled in the name of the corporation. To bolster his argument with respect to the car, Husband noted that another vehicle was purchased and titled in the same manner. However, this vehicle was specifically classified by the trial court as corporate property, and was neither subject to the division of marital assets nor listed as the non-marital property of either party. Wife countered this argument with testimony that the car was used for her personal use and that the other vehicle was used for Husband's personal use.

■ Missouri law is clear that a trial "court in a dissolution case may not exercise control over property belonging to a corporation even if one of the spouses is the sole shareholder of that corporation." *Montgomery v. Montgomery*, 18 S.W.3d 121, 125–26 (Mo.App. S.D.2000). Otherwise, the dissolution decree would "operate on the property of the corporation—an entity not a party to the litigation nor otherwise subject to the jurisdiction of the court." *Penn v. Penn*, 655 S.W.2d 631, 632 (Mo.App. W.D.1983). A party who is the sole shareholder of a corporation "does not have legal ownership of the corporation's property; rather, the title remains in the corporation." *Levesque v. Levesque*, 773 S.W.2d 220, 222 (Mo.App. E.D.1989).

■ The only exception Missouri courts have made in this regard is when the parties have agreed that certain items held in the corporation's name are marital assets and request that the trial court distribute that property in a specific manner. *See Secor v. Secor*, 790 S.W.2d 500, 502 (Mo.App. E.D.1990). There was no such agreement in the instant case, but rather there was conflicting testimony by the parties regarding that matter.

To support her argument that the trial court did not err in its classification of these items, Wife relies on cases in which a court has pierced the corporate veil in order to distribute property that was titled in a corporation. *See Morgan v. Ackerman*, 964 S.W.2d 865, 870–71 (Mo.App. E.D.1998); *Boudreau v. Benitz*, 827 S.W.2d 732, 734 (Mo.App. E.D.1992). Within these cases, the appellate court stated that "[u]nder the alter ego or instrumentality rule[,] when a corporation comes under the domination of a person as to have become a mere instrument of that person and is really indistinct from the person controlling it[,] then the corporate form will be disregarded if to retain it

results in injustice." *Krajcovic v. Krajcovic,* 693 S.W.2d 884, 887 (Mo.App. E.D. 1985). In such instances, "[i]t would be wrong to let the corporate veil stand." *Id.*

However, in the cases cited by Wife, the trial court made specific findings with regard to why it found it necessary to pierce the corporate veil. *See Morgan,* 964 S.W.2d at 870–71; *Boudreau,* 827 S.W.2d at 734. The instant case is more in line with cases in which the appellate court determined that the trial court had made no such finding, or that the record did not warrant such a finding. *See Chen v. Li,* 986 S.W.2d 927, 934 (Mo.App. E.D.1999); *In re Marriage of Ward,* 659 S.W.2d 605, 608 (Mo.App. S.D.1983). In *Ward,* the court noted that the record did not support a conclusion that the corporation served as an alter ego for the husband, and that it was "obvious that the trial court did not make its property disposition findings on the basis of any such conclusion." 659 S.W.2d at 608. The result in *Chen* was similar, as the appellate court determined that the record did not support an alter ego conclusion and that "the trial court exceeded its jurisdiction in dividing and disposing of [corporate] assets ... in its judgment." 986 S.W.2d at 934. The same is true in the instant case.

■ Wife also argues that the trial court must have determined that all of the items in question were given as gifts to the couple. However, the record does not reflect that determination. The record shows that Husband steadily maintained that all items were not only purchased by FEI, but also used and recorded as corporate assets. Wife, however, testified that the car was a gift to her, and that both collections were used for both her and Husband's enjoyment. Under Missouri law, clear and convincing evidence is required to establish a gift. *Heineman v. Heineman,* 768 S.W.2d 130, 139 (Mo.App.

W.D.1989). "A gift is shown by a transfer of title and possession to the donee, including the relinquishment by the donor of all ownership and control." *Id.* Specifically, for a motor vehicle, that transfer of ownership can only be accomplished by a transfer of a certificate of ownership in accordance with statute. *Id.* The title to the car was never transferred from FEI to Wife, and it and the collectibles were listed on FEI's corporate books.

■ The record does not provide a sufficient basis on which the trial court could have classified the two sets of collectibles or the car as anything other than corporate assets. Husband's second and third points are granted. Therefore, we reverse and remand on these two points and instruct the trial court to reevaluate the distribution of property in a manner consistent with this opinion and Missouri's definition of a just distribution of property, under which the trial court makes an appropriate division "after consideration of pertinent factors such as the contribution of each spouse to the acquisition of the marital property, the value of the property set apart to each spouse, and the economic circumstances of each spouse at the time the division of property is to become effective." *Mehra v. Mehra,* 819 S.W.2d 351, 357 (Mo. banc 1991). This may include reconsideration of any money judgment that the trial court concludes is appropriate for one party to pay the other to achieve a just distribution of marital property. In all other respects, the judgment is affirmed.

PREWITT and RAHMEYER, JJ., concur.