**In re the MARRIAGE OF Roxanne Lorraine FULDNER and John Eggert Fuldner, II.**

**Roxanne Lorraine Fuldner, Petitioner–Respondent,**

**v.**

**John Eggert Fuldner, II, Respondent–Appellant.**

**No. 23726.**

Missouri Court of Appeals, Southern District, Division Two.

March 30, 2001.

Ron Baird, Springfield, for Appellant.

James R. Sharp, Sharp & Bredesen, Springfield, for Respondent.

GARRISON, Judge.

John Fuldner ("Husband") appeals from a judgment entered in a dissolution of marriage case filed by Roxanne Fuldner ("Wife"). The issues relate to the authority of the trial court to award retroactive maintenance; the amount of maintenance awarded; the division of marital property; and the award of attorney fees.

Husband and Wife were married on October 20, 1990, had one child, and separated in September 1998. Although Wife was employed as an office manager at the time of the marriage, she left that employment in 1992 with Husband's agreement, and was not thereafter employed outside the home. Throughout the marriage, Husband was employed at EFCO, Inc. ("EFCO"), a window manufacturing business started by his father, Terry Fuldner, and now run by his brother, Chris Fuldner, who is president and CEO. At the time of trial, Husband's position with EFCO was sales manager. The trial court found that his income from that employment was: 1996–$203,246.44 including a $150,000 bonus; 1997–$273,929.71 including a $125,000 bonus; 1998–$154,468.58 with no bonus; and 1999–$159,714.33 with no bonus. The evidence was that a bonus was not paid to any of the officers in 1998 because the company lost money that year. In 1999, however, Chris Fuldner received a bonus of $500,000 and Terry Fulder received one of $250,000, but Husband told his brother that he did not want one and none was paid to him. Husband testified that his refusal of a bonus for 1999 was based on his attorney's advice not to accumulate assets.

Wife was diagnosed in 1994 with fibromyalgia. In the six months prior to trial, she had experienced fatigue so severe that sometimes she could not get out bed, chronic headaches, neck pain, shoulder pain, leg pain, hormone problems, gynecological problems, dizziness, numbness, memory problems, inability to concentrate, depression, anxiety, and insomnia. There was also testimony that Wife was not able to work outside the home on any kind of consistent basis, and that because of the nature of fibromyalgia, a person with that condition may have a good day or two, but "almost without fail, they have the next three or four days where they can't do anything."

In the judgment appealed from, the trial court, *inter alia*, divided the marital property in a manner that will be discussed later in this opinion, awarded each of the parties their non-marital property, imputed substantial income to Husband, ordered Husband to pay Wife $26,082 representing one-half of his net income after expenses since the separation in order to more "equitably divide the marital estate," ordered Husband to pay Wife maintenance of $5,000 per month retroactive to the date the petition was filed, ordered Husband to maintain Wife on "a policy of health insur-

ance" as additional maintenance, and ordered Husband to pay child support of $1,420 per month. This appeal followed.

■ As with other court-tried cases, we must affirm a decree in a dissolution case unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991).[1] We are to defer to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *In re Marriage of Perkel*, 963 S.W.2d 445, 447 (Mo.App. S.D.1998). This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *Id.*

■ Husband's first point on appeal relates to the trial court's award to Wife of maintenance in the amount of $5,000, retroactive to the date of the filing of her petition for dissolution. In this point, Husband contends that the trial court lacked statutory authority to grant retrospective maintenance because § 452.335[2] only authorizes maintenance to be awarded prospectively from the date of the decree.

■ Section 452.335, pertaining to the award of maintenance in a dissolution of marriage action, permits, *inter alia*, maintenance "in such amounts and for such periods of time as the court deems just." Notwithstanding that provision, the statute speaks prospectively. *Woolsey v. Woolsey*, 904 S.W.2d 95, 98 (Mo.App. E.D.1995); *C.M.D. v. J.R.D.*, 710 S.W.2d 474, 479 (Mo. App. E.D.1986). Accordingly, Missouri courts have consistently interpreted § 452.335 as authorizing prospective, as opposed to retrospective, maintenance. *McKee v. McKee*, 940 S.W.2d 946, 949 (Mo.App. S.D.1997). Consequently, a trial court does not have authority to award retroactive maintenance. *Id.; In re Marriage of Tappan*, 856 S.W.2d 362, 370 (Mo. App. S.D.1993).[3]

Wife implicitly admits the state of the case law on this subject, but requests that we re-examine the rule flowing from cases such as *C.M.D.* We were also requested to do so in *McKee* but refused, saying "this court finds no reason to rule contrary to established precedent." 940 S.W.2d at 949. In discussing that conclusion, we noted that § 452.335 was amended in 1988, and while the legislature then authorized retroactivity in child support awards, it took no action to authorize retrospective maintenance. *Id.* at 950. We said that "[s]ince the legislature chose not to act in the wake of appellate decisions which struck down retrospective maintenance, we continue in the view that the legislature never intended maintenance to be retrospective." *Id.*

Husband's point has merit. The award of retroactive maintenance must be reversed.

---

1. When *Mehra* was decided, the applicable standard of review was based on Supreme Court Rule 73.01(c). Essentially the same standard is now found in Rule 84.13(d).

2. All references to statutes are to RSMo 1994 and all references to rules are to Missouri Rules of Civil Procedure (2000), unless otherwise indicated.

3. In this case, Wife did not request temporary maintenance. Accordingly, cases which authorize retroactive temporary maintenance awards under § 452.315, RSMo Cum.Supp. 1999, are not controlling here. *See Roedel v. Roedel*, 788 S.W.2d 788, 790–91 (Mo.App. E.D.1990). *See also C.M.D.*, 710 S.W.2d at 479.

In his second point on appeal, Husband contests the award of "periodic maintenance of $5,000 per month and ordering [him] to pay for insurance on [Wife]" because the maintenance award was an abuse of discretion, was not supported by *substantial* evidence, was against the weight of the evidence and misapplied the law. He argues that Wife has not established a need for monthly periodic maintenance as required by Section 452.335; or, in the alternative, the award of periodic maintenance is clearly excessive and should be substantially reduced. In support, Husband presents seven sub-points under Point Two.[4]

▇▇▇ As acknowledged by Husband, the review of a maintenance award is extremely constrained in that it rests within the broad discretion of the trial court. *Goodin v. Goodin*, 5 S.W.3d 213, 216 (Mo. App. S.D.1999). We will reverse such an award only for an abuse of discretion, and the party challenging the award has the burden of demonstrating such an abuse. *Id.* "To establish that a trial court abused its discretion in making a maintenance award, the complaining party must show that the award is 'clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, it cannot be said the trial court abused its discretion.'" *Id.* The award of maintenance, however, is not one of unregulated discretion, and such awards cannot stand without evidentiary support. *Brooks v. Brooks*, 957 S.W.2d 783, 786 (Mo.App. W.D.1997).

▇▇▇ As noted by Husband, it is necessary that a party seeking maintenance prove a need before maintenance can be awarded. Section 452.335.1 provides that before granting maintenance, the trial court must find that the spouse seeking such an award lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and is unable to support himself through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. *See Goodin*, 5 S.W.3d at 217. In this case, Husband argues that Wife "was awarded enough property to provide for her reasonable needs and is able to support herself through appropriate employment." He also contends that the total of $6,420 awarded for maintenance ($5,000) and child support ($1,420) exceeds the amount found by the court to be the reasonably anticipated monthly expenses of both Wife and the child ($5,741).

▇▇▇ Wife presented two separate income and expense statements. One was Exhibit 6, which showed average monthly expenses of $3,775.49, and which Wife testified represented her average expenses for the "last several months." The other was Exhibit 7, which Wife testified contained her projected average monthly expenses of $8,093 .44.

▇▇▇ The statements were introduced with the affirmative statement from Husband's attorney that there was "no objection." Additionally, as to Exhibit 7, Husband's attorney announced that there was "no objection what her testimony would be and—and to what she's asking." Where, as here, exhibits are introduced with "No objection," and are not offered for any limited purpose, the contents may

---

4. In *Franke v. Franke*, 913 S.W.2d 846, 850, n. 3 (Mo.App. E.D.1995), the court said "[w]e discourage the use of sub-points. This practice rarely conforms with the dictates of *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978), and should be avoided ."

properly be considered as evidence of the facts therein. *Denton Constr. Co. v. Missouri State Highway Comm'n.*, 454 S.W.2d 44, 48 (Mo.1970). To prove expenses claimed, statements of income and expenses are routinely admitted and relied on without further testimony or documentary support for each individual item. *Brooks*, 957 S.W.2d at 788. Such statements properly offered and admitted in evidence can serve as substantial evidence to support a finding of reasonable need in the absence of a genuine dispute. *Id.* See also *M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 790 (Mo.App. E.D.1997). Although Husband now argues that Wife supplied no receipts to support the expenses shown in the exhibits, a party may not broaden the scope of objections on appeal beyond those made in the trial court. *See Green v. Miller*, 851 S.W.2d 553, 554 (Mo.App. W.D.1993).

The trial court found that the reasonably anticipated monthly expenses of Wife and the child were $5,741 per month, and awarded maintenance of $5,000 and child support of $1,420. The child support award was the amount demonstrated on Wife's Form 14, which the court found was not unjust or inappropriate. Husband does not, on this appeal, contend that the child support award was erroneous.

One of Husband's complaints under this point is that the total of the maintenance and child support awarded exceeded what the trial court found to be the reasonably anticipated monthly expenses for both Wife and the child. As a consequence, Husband argues that the maintenance award was excessive. Husband, however, cites no authority in support of this sub-point, and gives no explanation for why relevant authority is not available. Under such circumstances, the appellate court is justified in considering the point abandoned. *Shiyr v. Pinckney*, 896 S.W.2d 69, 71 (Mo.App. S.D.1995).

We are constrained to do so here. Otherwise, we would be in a position of becoming an advocate for one of the parties, a role an appellate court is not to undertake. *Thummel*, 570 S.W.2d at 686.

As we interpret Husband's next sub-point, he complains that in awarding Wife $5,000 per month in maintenance, the trial court did not attribute any income to her for interest on the "investments of $161,000.00 awarded to her." In the argument section of his brief, Husband posits trial court error in not attributing income to Wife, notwithstanding the fact that it awarded her $161,193 in "marital investments." He cites *Shook v. Shook*, 997 S.W.2d 103, 107 (Mo.App. S.D.1999), for the principle that a trial court is required to consider investment income a spouse may expect to receive from property received as part of the marital property distribution in awarding maintenance.

The statement of facts in an appellant's brief is to be a fair and concise statement of the facts relevant to the questions presented for determination without argument. Rule 84.04(c). In this case, the statement of facts in Husband's brief contains no reference to what marital property was awarded to Wife or to himself. The only reference to the amount of marital property awarded to Wife appears in the argument section of Husband's brief under this point where he argues that Wife was awarded "marital investments in the approximate amount of $161,193.00," with a reference to the legal file. The portion of the legal file referred to is a part of an exhibit attached to the decree indicating that Wife was awarded a bank account in her name in the amount of $1,000, "First Dallas Security" in the amount of $152,924.01, "Money Market IRA" of $3,769, "IRA Account First Dallas Securities" of $11.00, and "Jack Henry Stock" of $4,500. These total $162,204.01. We are

not cited to any portion of the record which would explain, for instance, the nature of "First Dallas Security." Husband does cite us to the 1998 income tax return with the statement that it indicates "substantial interest payments." The interest income shown in that exhibit totals $658. We do note, however, that the 1998 income tax return does show that dividends totaling $7,866 were received from entities shown as "First Dallas Sec. Alliance Capital," "First Dallas Securities," and "First Dallas Sec. KLM Dutch Airline." Whether all of those assets were still owned by the parties when the case was tried in 2000, and what income, if any, was then being realized from them, is left to speculation, especially since the parties here refer to only "First Dallas Securities." We do note, based on our own review of the record, that a statement of assets filed by Wife lists "First Dallas Securities Stock and Money Market accounts" without further explanation. Husband's "Statement of Property" lists "First Dallas Securities" in the amount of $152,924, and also lists "KLM Dutch Airlines" and "Alliance Capital" with no values shown. The end result is that the exact nature and income producing qualities of "First Dallas Securities" is, at best, speculative from the information presented to us. Likewise, we note that there is no indication whether the "Jack Henry Stock" produced income, and if so, how much. No income from that source appears in the parties' 1998 income tax return. Certainly, Wife, who was at the time of trial forty-five years old, could not realize any income from IRA accounts in the near future without incurring substantial penalties. In sum, we are presented with insufficient facts to permit us to determine what, if any, income from the "marital investments" the trial court should have, but allegedly did not, take into account in setting the amount of maintenance.

■ We are constrained to add that we are not directed to any portion of the record demonstrating that the trial court failed to consider investment income available to Wife in setting the amount of maintenance. One of Wife's income and expense statements claims average monthly expenses of $8,093.44. The trial court set the amount of maintenance at $5,000, saying that it did so after considering the factors specified in § 452.335.2, including the financial resources of the parties, and the assets, including marital property, apportioned to the party. Findings of fact and conclusions of law were not requested in this case. In such circumstances, fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(c); *Childers v. Childers*, 26 S.W.3d 851, 856 (Mo.App. W.D. 2000).

■ On appeal, the trial court's judgment is presumed valid and the burden is on appellant to demonstrate incorrectness of the judgment. *Campbell v. Rickert*, 938 S.W.2d 282, 285 (Mo.App. S.D.1997). Husband has not done so here. The second sub-point of Husband's first point on appeal is denied.

In his third sub-point, Husband contends that the maintenance award permits Wife to create a future estate and accumulate capital because her actual expenses are less than the total of the maintenance and child support awarded to her.[5] In the sub-point, he contends that Wife's actual

---

**5.** Husband cites no authority in support of the apparent premise of this sub-point that a maintenance award is not supported by evidence of reasonable need unless the evidence demonstrates that the reasonable expenses of a spouse totals more than the total of the maintenance and child support awards.

expenses did not amount to the total of the maintenance and child support awarded, and he specifically points to the fact that Wife had no house or car payments, and that she had only limited medical expenses. He cites *In re Marriage of Torix*, 863 S.W.2d 935, 940 (Mo.App. S.D.1993), for the principle that creating a future estate or preserving marital property intact under the guise of maintenance is contrary to the meaning or purpose of that term.

█ Neither of the income and expense statements introduced by Wife contained any amounts designated for house payments. Likewise, we are not cited to any evidence which indicated that Wife had a liability for any house payments. There is, therefore, no reason to believe that the trial court considered house payments in setting the maintenance. The evidence was clear, however, that Wife was not, as of the time of trial making car payments, although one of her income and expense statements contained $545.38 for that purpose. To have included a car payment without evidence that such an expense was reasonably expected would have been incorrect. We are directed to nothing, however, indicating that the trial court did, in fact include an amount for a car payment in setting the maintenance. The amount awarded for maintenance was $3,093.44 less than the higher of the two income and expense statements presented by Wife. We cannot presume that the $5,000 awarded for maintenance included the $545.38 shown as a car payment.

Husband also contends that Wife had limited medical expenses in comparison to the $700 per month shown on her income and expense statement. He points out that the testimony demonstrated that the only regular medical expenses amounted to $160 per month, or $540 per month less than that claimed in Wife's income and expense statement. Like the contention with regard to the car payment, even if the $540 were deducted from the amount of expenses shown on Wife's income and expense statement, the expenses remaining would total considerably more than the maintenance award. Additionally, the evidence indicates that the manifestations of Wife's medical condition were sporadic and inconsistent. What had been her recent medical expense was not necessarily a forecaster of the future. Husband has not demonstrated that the maintenance award was beyond Wife's reasonable needs and would permit her to accumulate capital and create a future estate. This portion of the point is denied.

█ In the next sub-point, Husband complains that the $5,000 maintenance award, when combined with the $1,420 child support award, constitutes at least 78% of his net income and exceeds his ability to pay by leaving him $1,733 per month to cover his basic needs. In support, he argues that his net income is $8,153, which would leave him $1,733 after paying the child support and maintenance awards totaling $6,420. This argument, however, ignores the fact that the trial court imputed income to Husband of $30,625 per month, gross, or $18,375 net, a finding which is not attacked in any of the points relied on in Husband's brief.[6] Husband does not argue that the maintenance award, together with the child support award, exceeded his ability to pay in light

6. The imputation of that income was based on the fact that, based on his attorney's advice not to take a bonus and accumulate assets because of this litigation, Husband informed his brother, the president of EFCO in 1999, that he did not want a bonus, and his brother and father both received bonuses that year. Prior to 1999, Husband had received bonuses when they were also paid to his brother and father.

of the imputed income. Accordingly, this portion of the point is without merit and is denied.

In his next sub-point, Husband attacks that portion of the maintenance award "ordering [Husband] to pay for insurance on [Wife] because" "[n]o evidence was adduced as to the cost of the future insurance coverage to [Husband] which decreases the $1,733 per month allowed to [Husband] to pay his reasonable needs." This portion of the point relates to that portion of the judgment by which the trial court ordered that "as an additional maintenance order, [Husband] maintain [Wife] at his expense on a policy of health insurance." [7]

■ First, we note that Husband continues to rely on the contention that he will have only $1,733 to satisfy his reasonable needs after paying the child support and maintenance awards which, as noted above, is contrary to the uncontested finding of the trial court concerning imputed income. We do not, therefore, conclude that the provision for the maintenance of medical insurance is in error because of any argument concerning Husband's ability to pay.

■ Husband also contends that the portion of the judgment ordering him to, as an additional maintenance order, maintain Wife "at his expense on a policy of health insurance," is uncertain as to cost, and as to type and extent of coverage, and accordingly is too vague, indefinite and uncertain. We agree.

In *Liberty v. Liberty*, 826 S.W.2d 381, 384 (Mo.App. E.D.1992), the husband was ordered to maintain, at his cost, "medical and hospitalization insurance" on the wife during any period in which he was required to pay maintenance. The appellate court found that the judgment, in that respect, was "vague and unenforceable because it is uncertain as to the cost and extent of coverage necessary and fails to set forth any criteria to determine the cost or extent of the coverage." *Id.* at 385. There, the court reversed and remanded with directions for the trial court "to make the provision requiring insurance coverage specific and enforceable." *Id.*

■ The portion of the decree ordering Husband to maintain Wife on a policy of health insurance at his expense is reversed and we remand to the trial court for additional proceedings with reference to insurance coverage on Wife. On remand, the trial court should determine the types and amounts of coverage it intended to require Husband to carry, consider the cost of such coverage, and determine whether, and to what extent, such coverage should be required of Husband considering the maintenance award already entered.

■ Finally, in the last sub-part under this point, Husband contends that it was error for the trial court to order him to pay maintenance of $5,000 per month because Wife was "not declared to be completely disabled and unable to contribute to her regular expenses yet no income was attributed to her." We are directed to nothing in the record from which we can conclude that no income was attributable to Wife. As indicated above, the trial court did not award maintenance in the full amount of the expenses shown by Wife in

---

7. Husband does not, in this point, complain about the portion of the judgment requiring him to carry health insurance on the minor child. In this regard, the trial court ordered Husband to "carry the minor child, ... on a policy of health insurance now in effect at his place of employment and pay for any medical, dental, hospital, optical, orthodontic, psychological, counseling, or pharmaceutical expenses of the minor child not covered by said policy of insurance, including any deductibles or co-pays."

one of her income and expense statements. We cannot determine from the decree whether that difference was as a result of the court concluding that not all of the expenses claimed by Wife were reasonable needs, that some income should be attributed to her, or some combination of the two. We reiterate that where no request is made for findings of fact and conclusions of law, such a request is deemed waived and all fact issues relative to the appeal are deemed found in accordance with the judgment. *Stoutimore v. Stoutimore,* 684 S.W.2d 344, 345 (Mo.App. W.D.1984).

The trial court found that "[Wife] suffers from fibromyalgia, a condition which prevents [Wife] from obtaining and maintaining employment or from supporting herself without assistance from [Husband]." The testimony, which the trial court was entitled to believe, was that Wife had suffered from a myriad of symptoms since long prior to the separation of the parties, and had been diagnosed with fibromyalgia. Wife testified that because of the fatigue and pain associated with that condition, she was unable to work outside the home. Husband agreed that Wife had fibromyalgia. Finally, a clinical psychologist testified that fibromyalgia keeps some people from performing their chosen profession and common daily tasks, that Wife could not work outside the home on any kind of a consistent basis, and agreed with Wife's conclusion that she was unable to do so. This testimony was admitted without objection.[8] Although Husband says that the clinical psychologist did not say that Wife was totally disabled, the testimony of that witness, taken together with the other evidence could lead to that conclusion by the trier of fact. This portion of Husband's second point is denied. Except to the extent noted above, Husband's second point is denied.

In Husband's third point, he contends that the trial court erred in dividing the marital property because it resulted in him receiving less than 16% of that property whereas Wife received more than 84% percent. He argues that the division of marital property was inequitable and against the weight of the evidence in that (A) the trial court failed to consider the relative contribution of each spouse to the acquisition of the property; (B) the conduct of the parties was not an issue; (C) the award of nonmarital property to Husband was not income producing; (D) the award of $26,082 to Wife as a "property set off" was not supported by any evidence and "further skews the property distribution"; and (E) the award exceeds the percentage of property requested by Wife.

 Pursuant to § 452.330.1, RSMo Cum.Supp.1999, the court is to divide marital property and debts in such proportion as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

**8.** The psychologist testified that fibromyalgia has a physical and psychological component.

This statute requires a fair and equitable division of marital property given the individual circumstances of the case, but does not require an equal division. *In re Marriage of Ward*, 955 S.W.2d 17, 19 (Mo.App. S.D.1997). The factors listed in § 452.330.1, are not exclusive and the trial court has great flexibility and far-reaching power in dividing the marital property. *Id.* On appeal, we presume the correctness of the division of marital property, and the party challenging that division must overcome that presumption. *Ewing v. Ewing*, 901 S.W.2d 330, 333 (Mo.App. W.D.1995). We will interfere with a judgment dividing marital property if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *In re Marriage of Spence*, 943 S.W.2d 373, 377 (Mo.App. S.D.1997). Awarding one party a considerably higher percentage of the marital estate than the other party is not per se an abuse of discretion. *Shook*, 997 S.W.2d at 109.

 Wife was awarded marital property valued at a total of $278,554.01 which, after deducting $10,491.59 in debts awarded to her, left a net distribution of $268,062.42. This consisted of $14,350 in personal property, the home valued at $90,000, a car valued at $12,000, a bank account of $1,000, two IRA accounts totaling $3,780, "Jack Henry Stock" valued at $4,500, and the "First Dallas Security," discussed earlier, with a value of $152,924.01. In addition, Husband was ordered to pay $26,082 "representing one-half of the unaccounted for income earned by [Husband] since separation ... to more equitably divide the marital estate."

Husband was awarded marital property with a gross value of $89,299, but after deducting $6,302.52 in marital debts as-

signed to him, left a net marital estate distribution to him of $82,996.48. This consisted of personal property valued at $1,595, a bank account in the amount of $9,000, "Stock, EFCO, ESOP" valued at $100,758, which totaled $111,353. From that was deducted Husband's nonmarital portion of the home in the amount of $22,054, which was awarded to Wife.[9]

Husband characterizes this as a distribution of $294,144.42 to Wife and $56,914.48 to him after deducting from his share and adding to Wife's the $26,082 he is to pay Wife, as the court said, to more equitably divide the marital estate. Consequently, he says that Wife received 84% of the marital estate and he received 16%. This characterization is not totally accurate. While Husband was ordered to pay Wife $26,082 as an equitable adjustment in the division of the marital estate, that amounted to one-half of Husband's net unaccounted for income since the separation. The other half was presumably retained by Husband. It is not correct, therefore, to deduct $26,082 from Husband's share of the estate in determining the percentages unless a like amount is added to his share representing the portion he retained. A more accurate description of the division would be $294,144.42 to Wife, and $109,078.48 ($82,996.48 plus $26,082 of the unaccounted for earnings retained by Husband) to Husband, or 73% to Wife and 27% to Husband.

In the instant case, Husband was awarded over $1,800,000 in separate property, including $1,783,774 in EFCO stock and an EFCO profit sharing account and ESOP in the amount of $57,613. This compared to Wife's separate property totaling $271,802,

---

9. No issue is raised about the awarding of Husband's nonmarital interest in the home to Wife.

which consisted of $263,952 in EFCO stock and the remainder in personal property.

Husband acknowledges the significant assets set aside to him as separate property, and that while there is no ready market for the EFCO stock which forms the vast majority of those assets because it is a closely held corporation, there is a possibility in the future that the company may sell resulting in large payments to stockholders. He argues that the separate property set aside to him is not income producing. Unlike Wife, Husband has substantial income from his employment.

■ Husband points out that at trial, Wife introduced an exhibit reflecting a proposed division of marital property of 61% to her and 39% to Husband. She also testified that she thought a two-thirds, one-third division would be appropriate under the circumstances. At trial, Husband proposed a 50–50 split of the marital property. One of Husband's arguments is that the trial court awarded Wife more of the marital property than she requested. Of course, the trial court is not bound by or required to follow the wishes of the parties concerning division of property. *Knapp v. Knapp*, 874 S.W.2d 520, 525 (Mo.App. W.D.1994).

Husband admits that Wife's role as a homemaker was important in the accumulation of their marital property, although he was the one who earned actual income. There is no indication here, as argued by Husband, that the trial court failed to consider the relative contributions of the parties in the acquisition of the marital property. The fact that Wife was not employed during most of the marriage was with the consent and encouragement of Husband.

In its decree in this case, the trial court said that it was awarding the marital property after consideration of all factors under § 452.330.1, RSMo Cum.Supp.1999. As in-dicated, the trial court has great flexibility in dividing marital property and we are to presume the correctness of its decision. In this case, the trial court was entitled to believe that Husband had intentionally diminished his income by declining a bonus in 1999 in anticipation of this litigation. In keeping with the provisions of § 452.330.1, RSMo Cum.Supp.1999, the trial court was also entitled to consider the value of the nonmarital property set aside to the parties. In this case, that included EFCO stock as well as a profit sharing account and ESOP set aside to Husband of over $1,800,000. Husband's economic circumstances were much better than Wife's considering her health and his ability to earn substantial income.

■ Nevertheless, we believe that the trial court erred in ordering Husband to pay Wife $26,082 as one-half of the unaccounted income earned by him after the separation in order to "more equitably divide the marital estate." This "unaccounted for income" was calculated by considering the amount Husband would have had after deducting from his net income what he said were his expenses as per the income and expense statement he presented to the trial court. Obviously, the trial court considered the net income received by Husband since the separation, after expenses, as marital property. Husband does as well, by arguing that the total award of marital property to Wife was $294,144.42 (the net $268,062.42 awarded to Wife plus the $26,082 Husband is to pay Wife to more equitably divide the marital estate). Without the payment of $26,082, Wife would receive $268,062.42. If Husband were allowed to retain all of the "unaccounted for" income, his portion of the marital assets would total $135,160.88 rather than $82,996.48 (the $82,996.48 set aside to him by the trial court plus the $52,164.40 of "unaccounted for" income

since the separation which the trial court and Husband implicitly treat as marital property). This would result in an effective division of marital property, on a percentage basis, of 33 .5% to Husband, and 66.5% to Wife. Considering the circumstances of this case, we believe that such a result would be more appropriate. To this extent, Husband's third point is well taken.

In his final point on this appeal, Husband contests the portion of the judgment in which he was ordered to pay a net of $23,000 on Wife's attorney's fees. The trial court, in entering the judgment for attorney fees, said that pursuant to § 452.335.1 it was appropriate to award Wife "her reasonable attorney fees and expenses of $25,000, less a credit of $2,500 in expert witness fees already paid by [Husband] to [Wife], for a net of $23,000.00, due to [Husband's] greater earning capacity, financial resources, and the expenses involved in obtaining financial records from [Husband's] employer, EFCO."

In this point, Husband contends that the trial court abused its discretion in entering this award. He argues that the attorney fees charged by Wife's counsel were excessive in that the litigation was not unduly protracted, and conduct was not placed at issue by either party. He also argues that Wife used marital assets to pay at least $18,000 in attorney fees, and given the property distribution, she has the ability to follow the general rule that each party should bear her own costs.

Section 452.355.1, RSMo Cum. Supp.1999, provides that the trial court, after considering all relevant factors, including the financial resources of the parties, the merits of the case, and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost of the other party maintaining or defending any proceeding pursuant to §§ 452.300 to 452.415 and for attorney's fees. In *Silcox v. Silcox,* 6 S.W.3d 899, 905 (Mo. banc 1999), the Missouri Supreme Court said that while parties to a dissolution case generally pay their own attorney fees, the trial court is given great discretion in awarding such fees and costs, and its decision should not be overturned unless it amounts to an abuse of discretion. That discretion will not be deemed to have been abused unless the decision is so arbitrary as to shock one's sense of justice. *Id.* A trial court's ruling on an award of attorney's fees is presumptively correct, and the party challenging that award has the burden of showing an abuse of discretion. *In re Marriage of Reed,* 762 S.W.2d 78, 84 (Mo. App. S.D.1988). In awarding attorney's fees, the trial court is considered an expert in the necessity, reasonableness, and value of the legal services. *Sola v. Bidwell,* 980 S.W.2d 60, 66 (Mo.App. W.D.1998). The trial court is not limited to considering the financial resources of the parties in awarding attorney's fees, but may consider all relevant factors. *Id.*

The evidence in this case indicated that Wife's total attorney's fees through the day of trial were $41,983, and of that amount, she still owed $18,929. In its judgment, the trial court, in awarding Wife her "reasonable attorney fees and expenses of $25,500, less a credit of $2,500.00 in expert witness fees already paid by [Husband]," effectively found that of her total attorney fees and expenses incurred, $25,500 were reasonable, and, by its judgment, required Husband to pay all of them.

Husband argues that these fees were excessive, considering the fact that the trial lasted only one day, and the conduct of the parties was not an issue. Wife responds that she was required to "file a

shareholders suit" in order to obtain records concerning the EFCO stock and the compensation history of Husband, Chris Fuldner, and Terry Fuldner. She also argues that she was required to hire a CPA to evaluate the "valuation reports provided by EFCO" since they contained "multiple values," and that, because of Husband's denial that Wife was in need of maintenance, despite the fact that he knew she had fibromyalgia, she was required to hire and bring to court an expert witness "as well as obtain and introduce into evidence literally hundreds of pages of medical records." Included in the factors the trial court can consider in awarding attorney fees is a spouse's conduct during the marriage and during the litigation which may have unfairly increased the other spouse's attorney's fees. *Calhoun v. Calhoun*, 934 S.W.2d 14, 15 (Mo.App. E.D. 1996). Here, the court obviously applied its expertise by holding that of the total attorney fees incurred by Wife, $25,500 was reasonable. It also obviously believed that actions attributable to Husband caused the fees and expenses to be higher than would normally be the case.

■ Husband also argues that Wife has the ability to pay her own fees because of the property distribution in this case. Even though the spouse's financial resources is a factor to be considered in awarding attorney's fees, a spouse's inability to pay his or her fees is not a requirement for awarding them. *McNair v. McNair*, 987 S.W.2d 4, 8 (Mo.App. W.D. 1998). One spouse's greater ability to pay the attorney fees is sufficient to support an award of such fees to the other spouse. *Id.* "The trial court has discretion to award attorney's fees to a spouse who was awarded sufficient assets to cover those fees." *Id.*

One troubling aspect to the attorney fee award in this case is Husband's contention that some of the fees had already been paid from marital funds. While he contends in his point that "[Wife] used marital assets to pay at least $18,000.00 in attorney fees," the argument section of his brief asserts that the money to do so was "partly" from withdrawals from a marital money market account. In fact, the record reflects that of the attorney fees paid by Wife, $8,460 came from a money market account that was marital property, and $2,500 from a joint account with Husband. These payments total $10,960.

■ The trial court apparently concluded that Husband should pay all of Wife's attorney fees and expenses that it found to be reasonable in ordering him to pay $25,500 minus $2,500 he had already advanced. While the trial court gave Husband credit for $2,500, it did not give him credit for his interest in the funds which had previously been used to pay a part of those fees. We believe that the trial court abused its discretion to the extent that it failed to give Husband credit for one-half of the $10,960 in marital funds already utilized to pay Wife's attorneys. Accordingly, the award of attorney's fees is reversed, and because the case is being remanded on other issues, the trial court is directed to enter an amended judgment awarding Wife attorney's fees of $17,520 (the $23,000 previously awarded minus $5,480 representing one-half the marital funds utilized to apply on attorney fees).

The portion of the judgment awarding maintenance retroactive to the date the petition was filed is reversed, and the award of $26,082 to Wife "representing one-half of the unaccounted for income earned by [Husband] since separation ... to more equitably divide the marital estate" is also reversed. That portion of the judgment ordering Husband to "maintain [Wife] at his expense on a policy of health insurance" is reversed and the case is re-

manded to the trial court for additional proceedings consistent with this opinion. On remand, the trial court is directed to enter an amended judgment awarding Wife attorney's fees of $17,520. In all other respects the judgment is affirmed.

PREWITT, J., and BARNEY, C.J., concur.