David L. BEAN, Petitioner–Appellant,

v.

Amy Dawn BEAN, Respondent–
Respondent.

No. 25215.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 2003.

Mark J. Millsap, and J. Matthew Miller, Baird, Lightner, Millsap & Kollar, P.C., Springfield, for appellant.

Richard L. Schnake, Neale & Newman, L.L.P., Springfield, and Gary L. Smith, Smith & Jackson, Lebanon, for respondent.

KENNETH W. SHRUM, Judge.

This is a domestic relations case in which David L. Bean ("Husband") appeals those parts of a dissolution decree that divide marital property and debts, order Husband to pay Amy Dawn Bean ("Wife") maintenance for five years, and award attorney fees to Wife. This court affirms in part; we reverse in part and remand.

### FACTS

Husband and Wife were married April 11, 1994, separated in the fall of 2000, and divorced on August 30, 2002.[1] There were no children born of the parties' marriage. Wife, however, had two children by a prior marriage.

Husband, born August 17, 1966, managed an automobile dealership. His 1991 annual salary was $119,821.88 and his monthly "take-home" salary was $7,053.20.

Wife, born March 19, 1969, has a high school education with "a couple of college credits." Her previous employment in-

---

1. The April 11, 1994 marriage was the second time they had married each other. Their first marriage occurred in November 1991. The earlier marriage was dissolved in the fall of 1993.

cluded working in and having management responsibilities for several small businesses. Wife also ran a diving business acquired by Husband and her in 1995. This involved selling diving equipment, sponsoring diving trips, and providing diving instruction. Husband claimed Wife's training in connection with this business was "pretty extensive," i.e., she was a certified "diving instructor" and open water scuba instructor, had certifications in first aid and CPR, and was a licensed aerobic instructor.

In contrast, Wife suggested that the diving business was one of Husband's "tax dodges" and that she could not "make much" as a diving instructor in Missouri. She also testified she had not spent "a lot of time on [her] career[ ]" as Husband "didn't feel like there was room in [their] relationship for two careers[;]" therefore, she "put things off in order to forward his well-being."

At the time of trial, Wife was working thirty hours per week for a Springfield firm that builds limousines, earning $10.50 per hour. Wife worked only thirty hours at her Springfield job because she taught evening water-aerobics classes for the city of Lebanon at the Cowan Civic Center. As to her future plans, Wife claimed she planned to attend a four-year college course and earn a degree. When asked if the income from her two jobs was sufficient to support her, she answered "no." She testified that if awarded the marital home (which she requested), she needed maintenance in the amount of $3,800 per month for five years.

## THE DECREE

The trial judge awarded marital property with net values of $48,614.30 to Husband and $104,314.10 to Wife.[2] In designating and setting aside to each party their respective non-marital property, the court found "[n]either party has any substantial non-marital property."

Wife's award of marital property included the marital home, which both parties and the court valued at $135,000. She was ordered to pay the first deed of trust debt on the home of $83,958.02. Husband was ordered to pay the second deed of trust on the home ($29,773.80). Additionally, Husband was ordered to pay a $21,211.10 obligation against a Chevrolet Blazer and certain credit cards with balances totaling $3,007.22. As stated in note 2, Husband was also ordered to buy Wife a vehicle having a value of $15,000 and pay Wife's attorney fees of $10,468.75.

In dividing marital property, the trial court found, *inter alia:*

"It is desirable to award the family home to [Wife] as she expressed interest in wanting to retain it so that she and her children can maintain the standard of living to which they have grown accustomed. Further, [Husband] promised [Wife's] children that they could remain living in the family home.

"Neither [Husband] nor [Wife] has made a greater contribution to the acquisition of the marital property. [Wife], in addition to her employment at the marital business, Blue Water Divers, and in addition to her part-time job at the Cowan Civic Center, made substantial contribution to the family by putting

**2.** The value of marital property awarded to Wife includes a $15,000 motor vehicle that Husband was ordered to purchase for Wife. However, the "net value" recital does not take into account Husband's $15,000 obligation to buy Wife a motor vehicle, nor does it take into account Wife's $10,468.75 attorney fee obligation which Husband was ordered to pay.

her career plans on hold so as to advance the career of [Husband]."

Finally, Husband was ordered to pay Wife maintenance in the amount of $3,343.22 per month for five years beginning February 1, 2002. Additional facts are given when relevant to a discussion of Husband's claims of trial court error.

## SCOPE OF REVIEW

 Our review is governed by Rule 84.13(d) and is set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).[3] *Mistler v. Mistler*, 816 S.W.2d 241, 245[1] (Mo. App.1991). Thus, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32[1]. Within the confines of the law and the evidence, the trial court has broad discretion in awarding maintenance, *In re Marriage of Liljedahl*, 942 S.W.2d 919, 924[2] (Mo.App.1997); dividing marital property, *In re Marriage of Gilmore*, 943 S.W.2d 866, 876[13] (Mo.App. 1997); and awarding attorney fees, *Mistler*, 816 S.W.2d at 256[18]. On these matters, we review for an abuse of discretion.

## DISCUSSION AND DECISION

At the outset, we note Wife has requested that we dismiss Husband's appeal for non-compliance with Rule 84.04(c). Under that rule, a brief filed with this court must contain "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Although Wife's complaint is marginally valid, we exercise our discretion to proceed with the appeal on its merits.

We caution, however, this ruling does not mean we find Husband's brief complies with Rule 84.04. This excerpt from *Norman v. Ballentine*, 627 S.W.2d 83 (Mo. App.1981), explains our decision to address Husband's claims of reversible error:

"Inadequate briefs of counsel are a disservice to parties so represented and a burden on the system of justice. *See Thummel v. King*, 570 S.W.2d 679, 686 (Mo.banc 1978). Because of the result here reached, however, suspension of strict application of Rule 84.04 will work no hardship on the respondent. Our jurisdiction is apparent from the record, and we have been able to determine the facts of the case and the issues to be decided from the briefs and transcript. A punitive order of dismissal would serve no purpose here, but we trust that members of the bar will take heed of the warning implicit in our discussion of this matter."

*Id.* at 85.

*Point II: Alleged Error In Division of Marital Property*[4]

Husband's second point maintains that the trial court's award of less than 36% of the marital assets to Husband must be reversed because it was "inequitable and against the weight of the evidence in that [Wife] admitted" her marital misconduct, the marriage only lasted six years, and there were extra debts imposed on Husband. These extra debts include the purchase of a $15,000 vehicle for Wife and payment of her $10,468.75 attorney fee, reducing Husband's net marital property award to less than 21% of the parties' total marital property.

 Initially, we note Husband's contention that reversal of the marital proper-

---

**3.** All rule references are to Supreme Court Rules (2003), unless otherwise stated.

**4.** For reasons explained later in this opinion, we need not address Husband's first point.

ty portion of the judgment is mandated because (a) the marriage was of short duration and (2) Wife was guilty of marital misconduct, is left wholly undeveloped and unmentioned in the argument part of his brief. Accordingly, those arguments have been abandoned. It is not within the province of this court to decide an argument that is merely asserted but not developed. *Bratt v. Cohn*, 969 S.W.2d 277, 283[3] (Mo.App.1998).

■ Turning to the third prong of Husband's argument, the "inexorable" statutory mandate for division of marital property and marital debts is that it be "in such proportions as the court deems just after considering all relevant factors." § 452.330.1; *Judy v. Judy*, 998 S.W.2d 45, 52 (Mo.App.1999). This does not mean, however, that property and debt division have to be equal; the only requirement is that they be fair and equitable and take into account all relevant factors, including those listed in section 452.330.1.[5] *Cofer v. Price–Cofer*, 825 S.W.2d 369, 375 (Mo.App.1992).

■ There is no formula respecting the weight a trial court should give relevant factors. *Poole v. Poole*, 977 S.W.2d 940, 945 (Mo.App.1998). As a reviewing court, we assume the trial court considered all the evidence when it divided marital property and marital debt. *In re Marriage of Garrison*, 846 S.W.2d 771, 777 (Mo.App.1993).

■ Husband argues that once the additional debts imposed upon him are factored into the division, the resulting division of net assets gives Husband 20.2% and Wife 79.8% thereof. He then argues (without citing supportive authority) that "[t]hese figures considered *independently* of the statutory factors, under § 452.330, are sufficient to constitute an inequitable distribution of property and an abuse of discretion." We disagree.

■ An award by a court of considerably more property to one spouse than to the other is not *per se* an abuse of discretion. *Taylor v. Taylor*, 25 S.W.3d 634, 640[8] (Mo.App.2000). In fact, the appellate courts of this state routinely affirm highly disproportionate divisions of marital property. *Nelson v. Nelson* 25 S.W.3d 511, 517 (Mo.App.2000).[6] No error of law appears simply because the net value of marital property assigned, after debt division, was 20.2% to Husband and 79.8% to Wife. We reject Husband's argument to the contrary.

■ Having dealt with Husband's claim that the division was *per se* inequita-

---

**5.** The section 452.330.1 factors relevant in this case are:

"(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home ... to the spouse having custody of any children;

"(2) The contribution of each spouse to the acquisition of the marital property including the contribution of a spouse as a homemaker;

"(3) The value of the nonmarital property set apart to each spouse;

"(4) The conduct of the parties during the marriage...."

**6.** *See, e.g., In re Marriage of Jennings*, 910 S.W.2d 760, 765–67 (Mo.App.1995) (86%–

14% approved); *May v. May*, 801 S.W.2d 728, 734 (Mo.App.1990) (holding a 75%–25% division was not *per se* an abuse of discretion); *Langdon v. Langdon*, 792 S.W.2d 645, 647–49 (Mo.App.1990) (80%–20% division approved); *Hayes v. Hayes*, 792 S.W.2d 428, 429 (Mo.App.1990) (74%–26%); *Dove v. Dove*, 773 S.W.2d 871, 872 (Mo.App.1989) (90.5%–9.5%); *Buchheit v. Buchheit*, 768 S.W.2d 641, 642 (Mo.App.1989) (75%–25%); *Mika v. Mika*, 728 S.W.2d 280, 283 (Mo.App.1987) (84%–16%); *Arp v. Arp*, 572 S.W.2d 232, 235 (Mo.App.1978) (72%–28%); *In re Marriage of Burris*, 557 S.W.2d 917, 918 (Mo.App.1977) (88%–12%).

ble, we consider his claims that statutory factors mandate reversal. In doing so, we note that the statutory factor "economic circumstances" is broad enough to include a party's enhanced capacity to work and earn money. *Cofer,* 825 S.W.2d at 375[10]. Here, Husband's salary was over $119,000 per year, he had other employment benefits, and his employment history showed a trend of increased earnings each year. Contrarily, Wife was working at a $10.50 per hour job, which she said was the best she had been able to find. Wife denied Husband's contentions regarding what she could make as a diving instructor. She claimed she could not make "much" in that profession in Missouri, and it was unrealistic to expect she could move her two school-age children to Cozumel, Mexico, in order to have employment. The trial judge was entitled to believe Wife on this subject. He was also entitled to believe Wife's assertions that during their marriage Husband had been opposed to Wife going to college and that "she had put things off in order to forward his well-being." In sum, there is evidence to support the trial court's implicit conclusion that the economic factor supported a marital property and marital debt division favorable to Wife.

▮▮▮▮ In another part of Husband's Point II argument, he urges reversal based on the following recital in the judgment: "This statutory factor [referring to Wife's contribution to the marital property] supports awarding the family home to [Wife], and further dividing all remaining assets approximately equally ...; however, each party shall receive their own individual retirement account assets."

Husband claims this shows the trial court intended to award Wife the marital home, award each party their respective retirement accounts, and then divide equally the balance of the marital assets. Claiming such a division did not occur, Husband primarily focuses on the court's valuation and inclusion of the parties' one-half interest in a damaged 1965 Cessna 172 airplane as marital property.[7]

Husband testified the plane had no value in its damaged condition, and he had given it to a charitable organization. Contrarily, Wife testified she had seen the plane after it was damaged, it still had value based on her research and observations, and their one-half interest in the damaged plane was valued at $10,000.

The trial court accepted Wife's valuation and awarded the damaged airplane to Husband. Husband now argues on appeal that "the weight of the evidence ... shows that the plane has little to no value, and was, at the time of trial ..., no longer marital property subject to division."

Again, Husband's argument is nothing more than a request for this court to reweigh the evidence, which we cannot do. Obviously, the trial court believed Wife and disbelieved Husband on this issue. The court's finding that the damaged airplane was a marital asset worth $10,000 was not against the weight of the evidence. To the contrary, Wife's testimony supported that finding.

Finally, contrary to Husband's claim, the net asset distribution is approximately equal after excluding the marital home and the parties retirement accounts. This is illustrated by the following:

---

7. Husband's point relied on says nothing about valuation; consequently, Wife is correct when she says Husband's complaint about the court's value assignment is not preserved. This follows as appellate courts are only obli-

gated to review issues raised in the points relied on. *In re Marriage of Thomas,* 21 S.W.3d 168, 173 n. 5 (Mo.App.2000). Even so, we gratuitously consider this argument.

| | WIFE | HUSBAND |
|---|---|---|
| Gross Property Value | $188,272.10 | $102,606.75 |
| *Less* marital home | ($135,000.00) | |
| *Less* retirement accounts | ($ 14,257.99) | ($ 11,898.99) |
| *Less* allocated debt | | ($ 68,992.12) |
| Net Property Division [8] | $ 27,074.03 | $ 21,715.64 |

In sum, after careful consideration of Husband's Point II arguments, we find they do not support reversal as Husband urges. Based on the arguments made, we find no abuse of discretion by the trial court in its division of the marital property and debts. Point denied.

*Point III: Alleged Error In Maintenance Award*

■ Husband's third point charges that the trial court abused its discretion and committed reversible error in awarding maintenance to Wife of $3,343.22 per month for five years. He argues, *inter alia*, that such an award is not supported by evidence and is against the weight of the evidence.

■ Within the confines of the law and the evidence, a trial court has broad discretion in awarding maintenance. *Myers v. Myers*, 47 S.W.3d 403, 409[13] (Mo.App.2001). The corollary to this principle is that an award of maintenance is not one of unregulated discretion and such awards cannot stand without evidentiary support. *In re Fuldner*, 41 S.W.3d 581, 588[8] (Mo.App.2001). Judicial discretion is abused when the court's judgment is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice, indicating a lack of careful consideration.

*Hileman v. Hileman*, 909 S.W.2d 675, 679 (Mo.App.1995).

■ In a dissolution of marriage case, a court may award maintenance to either spouse, but only if it finds that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. § 452.335.1. Under this section, a spouse must prove need before a court can order maintenance. *In re Marriage of Murphy*, 71 S.W.3d 202, 205[4] (Mo.App.2002). Further, the purpose of maintenance is to assist a spouse who is unable to be self-supporting through appropriate employment. *In re Marriage of Gibson*, 23 S.W.3d 686, 691[9] (Mo.App.2000). A divorcing spouse has an affirmative duty to seek appropriate full-time employment after dissolution. *Nelson v. Nelson*, 937 S.W.2d 753, 755[3] (Mo. App.1997).

Based on Husband's evidence, the court found his annual salary was $119,821.88

---

**8.** This chart excludes not only the marital home but also excludes from the debt allocation that part of the marital house debt assigned to Wife, i.e., $83,958.02. Wife's gross property figure ($188,272.10) includes the $15,000 vehicle that Husband must buy for Wife. The $68,992.12 debt allocation to Husband includes his obligation to buy a $15,000 vehicle for Wife.

and average monthly gross income was $9,985.16. Regarding Wife's employment, income, and request for maintenance, the judgment recited:

"[Wife] is employed by Debryan Coach, in Springfield, Missouri, also by the City of Lebanon (Cowan Civic Center). Her monthly gross income from said employment is $1,260.00.

"[Wife] has requested maintenance in the amount of $3,800.00 per month for five years, or until she earns a college degree."

Thereon, the court adjudged that Husband "pay maintenance to [Wife] in the amount of $3,343.22 per month for five years beginning February 1, 2002." This adjudication was made without any additional findings relating to maintenance issues. Conspicuously absent was a specific finding as to the amount of Wife's reasonable needs or a finding as to whether she lacked sufficient property, including marital property apportioned to her, to provide for her reasonable needs.

Regarding maintenance, Wife testified to the following:

"Q. Now, you've gone through your income and expense statement that you've filed with the Court and you've gone through your property. In view of the property and the income and expense statements, and if you have the house and are making the house payment, how much are you asking this Court to award you as temporary maintenance?

. . . .

"A. $3,800 a month.

"Q. And for how long?

"A. For a period until I get out of school.

. . . .

"Q. Basically for five years?

"A. Right."

▇ Although Wife's testimony encompassed ninety transcript pages, she provided no details or specifics to support her maintenance request, i.e., nothing to prove her current expenses or financial needs, or how she arrived at the $3,800 maintenance figure. The record shows Wife filed an income and expense statement in the office of the Laclede County circuit clerk, but it was never introduced into evidence. The filing of an income and expense statement does not put it before the court as evidence. *Shelton v. Shelton*, 29 S.W.3d 400, 405[15] (Mo.App.2000); *Halupa v. Halupa*, 943 S.W.2d 272, 277 (Mo.App.1997); *Chapman v. Chapman*, 871 S.W.2d 123, 126 (Mo.App.1994). Consequently, the only evidence of Wife's expenses or needs is that which we glean from *Husband's* exhibits. That evidence is limited and only shows Wife's house payment, i.e., $851.94 per month.

Another shortfall in Wife's evidence concerns her income. Wife stated she only worked thirty hours in Springfield because she had to leave early to get to her job in Lebanon. The court found Wife had two jobs, yet there is no evidence about the amount of her income from the Lebanon job. Mathematical calculations reveal that the $1,260 monthly income attributed to Wife by the court would be salary from the Springfield job. As such, Wife's needs (whatever they may be) would be reduced by the amount of her undisclosed income from the Lebanon job.

▇ A party's request for spousal maintenance, without more, is insufficient to support a maintenance award; rather, awards of maintenance must be made within a reasonable tolerance of proof. *Shelton*, 29 S.W.3d at 405[16]; *In re Marriage of Trimble*, 978 S.W.2d 55, 58[7] (Mo.App.1998). Here, as in *Shelton*, *Trimble* and *Halupa*, the record is insufficient to conclude whether Wife has met

her burden of showing need. "[A]bsent findings by the trial court as to Wife's reasonable needs and whether or not she can meet those needs without maintenance, we cannot determine whether or not the trial court abused its discretion in awarding Wife maintenance." *Shelton*, 29 S.W.3d at 405. Husband's third point has merit. The maintenance award must be reversed and remanded for reconsideration.[9]

*Point IV: Alleged Error In Attorney Fee Award*

██ In this point, Husband contends that the trial court abused its discretion in awarding Wife $10,468.85 in attorney fees. He asserts the trial court failed to consider all necessary factors that underlie an attorney fee award because Wife got the majority of the marital property, whereas Husband received the majority of the marital debts and was ordered to pay $3,343.22 monthly maintenance to Wife. He also claims the trial court failed to adequately consider Wife's admitted marital misconduct.

After considering all relevant factors, including the financial resources of the parties, the merits of the case, and the actions of the parties during the pendency of the action, the trial court may order a party to pay for the cost of the other party's attorney fees. § 452.355.1.

██ Here, Husband earned approximately nine times what Wife earned. A spouse's greater ability to pay is sufficient to support an award of attorney fees to the other spouse. *Fuldner*, 41 S.W.3d at 597[40]. Although Wife was awarded a larger share of the marital assets, she was assigned more of the marital debt. In any event, a trial court has discretion to award attorney fees to a spouse who was awarded sufficient assets to cover those fees. *Id.* at 597 Moreover, our reversal of the maintenance award disposes of Husband's claim that the trial court never considered maintenance in awarding Wife attorney fees.

As to the misconduct factor, it is true that Husband focused much of his evidentiary effort on proving Wife's unfaithfulness; however, she denied all but one of his allegations. On the other hand, Wife charged Husband with having an affair with a secretary (which he denied). The resolution of these conflicting sexual misconduct claims lay within the trial court's domain. Although the court made no specific findings regarding sexual misconduct, the judgment entered indicates the court resolved these issues favorably to Wife and adversely to Husband.

Finally, the trial court found Husband had increased certain marital debts during the pendency of the dissolution in direct violation of the court's order. Evidence in the record supports such a finding and, in turn, supports the attorney fee award. *See Halupa*, 943 S.W.2d at 279.

In sum, we are unable to find, based upon this record, that the trial court abused its discretion in awarding Wife $10,468.85 in attorney fees. Point IV is denied.

The portion of the judgment awarding Wife $3,343.22 per month for five years is reversed and remanded for further proceedings. In all other respects, the judgment is affirmed.[10]

---

9. By reversing for the reasons stated, we do not intend to imply that the maintenance award would necessarily have been affirmed if Wife's income and expense statement had been in evidence.

10. Our reversal of the maintenance award renders moot Husband's first point, i.e., alleged error in awarding maintenance retroactively to February 1, 2002. As such, we need

PARRISH, J. concurs.

RAHMEYER, C.J.-P.J. concurs.

not and have not addressed that claim of trial court error.